NO. 13-14-00565-CV

# IN THE THIRTEENTH COURT OF APPEALS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/5/2015 8:36:04 PM
DORIAN E. RAMIREZ
Clerk

## CORPUS CHRISTI, TEXAS

_____

**FRANCIS W. SINATRA, JR.,**
                                 **Appellant**

**v.**

**CYNTHIA SINATRA,**
                                 **Appellee**

_____

**Appealed from the 329th Judicial District Court, Wharton County, Texas**

_____

## APPENDIX TO APPELLANT'S BRIEF

_____

LYNN KURIGER STANTON
State Bar No. 11767600
JENKINS & KAMIN, L.L.P.
TWO GREENWAY PLAZA, STE. 600
HOUSTON, TEXAS 77046
TEL: (713) 600-5500
FAX: (713) 600-5501
lstanton@jenkinskamin.com

WARREN COLE
State Bar No. 04549500
LAW OFFICE OF WARREN COLE
3355 W. ALABAMA, STE. 825
HOUSTON, TEXAS 77098
TEL: (713) 275-4444
FAX: (713) 400-9144
warren@warcolelaw.com

ATTORNEYS FOR APPELLANT
FRANCIS W. SINATRA, JR.

FILED
at _____ o'clock ___ M.

JUN 2 6 2014

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO., TEXAS
By_____Deputy

NO. 46,184

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CYNTHIA SINATRA | § | 329TH JUDICIAL DISTRICT |
| AND | § | |
| FRANCIS WAYNE SINATRA | § | WHARTON COUNTY, TEXAS |

## FINAL DECREE OF DIVORCE

On July 15 and 16, 2013 the Court heard the issue of the existence/non-existence of an informal marriage. The Court finding the parties were married pursuant to Tex. Fam. Code § 2.401 is reflected in the Interlocutory Order-Common Law Marriage which was signed on August 12, 2013. A true and correct copy of said interlocutory order is attached hereto and incorporated herein for all purposes as Appendix A. On June 2 and June 3, 2014 the Court heard the remaining issues in this case.

*Appearances*

Petitioner, CYNTHIA SINATRA, appeared in person and through attorney of record, John C. Maher, Jr., and announced ready for trial.

Respondent, FRANCIS WAYNE SINATRA, appeared in person and through attorney of record, Warren Cole, and announced ready for trial.

*Record*

The record of testimony was duly reported by the official court reporter for the 329th Judicial District Court Sherri Johnson

*Jurisdiction and Domicile*

The Court finds that the pleadings of CYNTHIA SINATRA are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving

1

evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, CYNTHIA SINATRA had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that CYNTHIA SINATRA, Petitioner, and FRANCIS WAYNE SINATRA, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Child of the Marriage*

The Court finds that there is no child of the marriage of CYNTHIA SINATRA and FRANCIS WAYNE SINATRA, and that none is expected.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

Property to FRANCIS WAYNE SINATRA

IT IS ORDERED AND DECREED that FRANCIS WAYNE SINATRA is awarded the following as his sole and separate property, and CYNTHIA SINATRA is divested of all right, title, interest, and claim in and to that property:

H-1.    A undivided one-half (1/2) community interest in the property identified as 9706

2

194

Hensel Road, Beverly Hills, California 90210, and 50% of the net proceeds from the sale of the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents. "Net Proceeds" as used herein shall means the gross sales proceeds less all closing costs associated there with, including, but not limited to escrow fees, title insurance, broker commissions, transfer taxes, etc.:

A certain described property located in the County of LOS ANGELES, of the State of California:

LOT 9 OF TRACT NO. 21845, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 619, PAGES 83 AND 84 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY;

Also more commonly called 9706 Hensel Road, Beverly Hills, California 90210.

H-2. The Court confirms a 50% undivided separate property interest in the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

LOT FIVE (5), LESS, SAVE AND EXCEPT THE NORTHWEST 12' THEREOF BEING LOT FIVE (5) OF THE RESUBDIVSION OF LOTS FOUR (4) AND FIVE (5), KELVING WAY ESTATES, AS SHOWN BY PLAT RECORDED IN SLICE 2064 OF THE WHARTON COUNTY PLAT CABINET RECORDS, AND ALL OF LOT SIX (6), KELVING WAY ESTATES, AS SUBDIVISION IN THE CITY OF WHARTON, WHARTON COUNTY, TEXAS, AS SHOWN BY RE-PLAT THEREOF RECORDED IN SLIDE 69A OF THE WHARTON COUNTY PLAT CABINET RECORDS, AND BEING THE SAME TWO TRACTS OF LAND CONVEYED TO MICHAEL B. MURPHY AND JENNIFER LYN MURPHY, BY JOHN M. FINK AND SUZANNE M. FINK, IN WARRANTY DEED WITH VENDOR'S LIEN DATED JULY 17, 2002, AND RECORDED IN VOLUME 466, PAGE 605, OF THE OFFICIAL

3

RECORDS OF WHARTON COUNTY, TEXAS;

also more commonly known as 1913 Kelving Way Court, Wharton, Texas.

H-3. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the FRANCIS WAYNE SINATRA or subject to his sole control.

H-4. All clothing, jewelry, and other personal effects in the possession of the FRANCIS WAYNE SINATRA or subject to his sole control.

H-5. The 2014 GMC Acadia motor vehicle, vehicle identification number 1GKKVTKD0EJ250100, together with all prepaid insurance, keys, and title documents.

H-6. All sums of cash in the possession of FRANCIS WAYNE SINATRA, or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in the bank account held by the FRANCIS WAYNE SINATRA Trust (dated 6/15/1998 and restated 9/20/2005).

H-7. The Court confirms the as the sole and separate property of FRANCIS WAYNE SINATRA, the items of property which are listed on CYNTHIA SINATRA's Exhibit 100, on lines 76 through 102, excluding line 85. A true and correct copy of said Exhibit 100 is attached hereto and incorporated herein for all purposes as Appendix B.

Property to CYNTHIA SINATRA

IT IS ORDERED AND DECREED that CYNTHIA SINATRA is awarded the following as her sole and separate property, and the FRANCIS WAYNE SINATRA is divested of all right, title, interest, and claim in and to that property:

W-1. A undivided one-half (1/2) community interest in the property identified as 9706 Hensel Road, Beverly Hills, California 90210, and 50% of the net proceeds from the sale of the

4

196

following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents. . "Net Proceeds" as used herein shall means the gross sales proceeds less all closing costs associated there with, including, but not limited to escrow fees, title insurance, broker commissions, transfer taxes, etc. A certain described property located in the County of LOS ANGELES, of the State of California:

> LOT 9 OF TRACT NO. 21845, IN THE CITY OF LOS ANGELES, COUNTYF OF LOST ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 619, PAGES 83 AND 84 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY;

> Also more commonly called 9706 Hensel Road, Beverly Hills, California 90210.

W-2. The Court confirms an undivided fifty percent (50%) separate property interest in the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> LOT FIVE (5), LESS, SAVE AND EXCEPT THE NORTHWEST 12' THEREOF BEING LOT FIVE (5) OF THE RESUBDIVSION OF LOTS FOUR (4) AND FIVE (5), KELVING WAY ESTATES, AS SHOWN BY PLAT RECORDED IN SLICE 2064 OF THE WHARTON COUNTY PLAT CABINET RECORDS, AND ALL OF LOT SIX (6), KELVING WAY ESTATES, AS SUBDIVISION IN THE CITY OF WHARTON, WHARTON COUNTY, TEXAS, AS SHOWN BY RE-PLAT THEREOF RECORDED IN SLIDE 69A OF THE WHARTON COUNTY PLAT CABINET RECORDS, AND BEING THE SAME TWO TRACTS OF LAND CONVEYED TO MICHAEL B. MURPHY AND JENNIFER LYN MURPHY, BY JOHN M. FINK AND SUZANNE M. FINK, IN WARRANTY DEED WITH VENDOR'S LIEN DATED JULY 17, 2002, AND RECORDED IN VOLUME 466, PAGE 605, OF THE OFFICIAL RECORDS OF WHARTON COUNTY, TEXAS.;

> also more commonly known as 1913 Kelving Way Court, Wharton, Texas.

5

197

W-2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of CYNTHIA SINATRA or subject to her sole control.

W-3. All clothing, jewelry, and other personal effects in the possession of CYNTHIA SINATRA or subject to her sole control.

W-4. All sums of cash in the possession of CYNTHIA SINATRA or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in the Prosperity Bank Account, Joint #X7807 (Prosperity listed on line 19 on Appendix B.

W-5. All policies of life insurance (including cash values) insuring CYNTHIA SINATRA's life (the life insurance policies are identified at trial in CYNTHIA SINATRA's Exhibit 100, Lines 101, 102, 103, and 104, a true and correct copy of which is attached hereto as Appendix B for reference).

W-6. The 2006 Jaguar XJ VDP LWB 4D motor vehicle, vehicle identification number SAJWA82B96SH10682, together with all prepaid insurance, keys, and title documents.

W-7. Wharton Country Club membership.

Division of Debt

Debts to FRANCIS WAYNE SINATRA

IT IS ORDERED AND DECREED, FRANCIS WAYNE SINATRA, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold CYNTHIA SINATRA and her property harmless from any failure to so discharge, these items:

H-1. Fifty percent (50%) of the balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by FRANCIS WAYNE SINATRA,., in the original principal sum of $1,806,000.00, dated August 8, 2012, payable to City National Bank, and

6

secured by deed of trust recorded/filed in the Official Records Recorder's Office, Los Angeles County, California.

H-2. Fifty percent (50%) of the balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by CYNTHIA SINATRA and FRANCIS WAYNE SINATRA, in the original principal sum of $304,000.00, dated January 20, 2005, payable to Mitchell Mortgage Company, LLC, and secured by deed of trust on the real property confirmed in this decree as the separate property of FRANCIS WAYNE SINATRA (50%) and CYNTHIA SINATRA (50%), which is recorded at volume 594, page 630, Deed of Trust Records of Wharton County, Texas.

H-3. The balance due, including principal, interest, and all other charges, on the promissory note payable to City National Bank, Account No. xxxxxxxxxxxx-x2982, and given as part of the purchase price of and secured by a lien on the 2014 GMC Acadia motor vehicle awarded to FRANCIS WAYNE SINATRA.

H-4. The following debts, charges, liabilities, and obligations:

    a. The Promissory Note from FRANCIS WAYNE SINATRA to the NANCY SINATRA LAMBERT TRUST, in the principal sum of $250,000.00. For identification and clarity purposes this can also be identified as FRANCIS WAYNE SINATRA's Trial Exhibit No. R-51.

Debts to CYNTHIA SINATRA

IT IS ORDERED AND DECREED that CYNTHIA SINATRA, Petitioner, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the FRANCIS WAYNE SINATRA and his property harmless from any failure to so discharge, these items:

W-1. Fifty percent (50%) of the balance due, including principal, interest, tax, and

7

199

insurance escrow, on the promissory note executed by CYNTHIA SINATRA and FRANCIS WAYNE SINATRA, in the original principal sum of $304,000.00, dated January 20, 2005, payable to Mitchell Mortgage Company, LLC, and secured by deed of trust on the real property confirmed in this decree as the separate property of FRANCIS WAYNE SINATRA (50%) and CYNTHIA SINATRA (50%), which is recorded at volume 594, page 630, Deed of Trust Records of Wharton County, Texas.

W-2. 100% of all of the debts, charges, liabilities, and obligations set forth on Appendix B on lines 44 through 55, inclusive.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

**Provisions Dealing with Sale of 1913 Kelving Way Court, Wharton, Texas**

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at LOT FIVE (5), LESS, SAVE AND EXCEPT THE NORTHWEST 12' THEREOF (BEING LOT FIVE (5) OF THE RESUBDIVSION OF LOTS FOUR (4) AND FIVE (5), KELVING WAY ESTATES, AS SHOWN BYPLAT RECORDED IN SLICE 2064 OF THE WHARTON COUNTY PLAT CABINET RECORDS, AND ALL OF LOT SIX (6), KELVING WAY ESTATES, AS SUBDIVSION IN TH CITY OF WHARTON, WHARTON COUNTY, TEXAS, AS SHOWN BY RE-PLAT THEREOF RECORDED IN SLIDE 69AOF THE WHARTON COUNTY PLAT CABINET RECORDS, AND BEING THE SAME TWO TRACTS OF LAND CONVEYED TO MICHAEL B. MURPHY AND JENNIFER LYN MURPHY, BY JOHN M. FINK AND SUZANNE M. FINK, IN WARRANTY DEED WITH VENDOR'S LIEN

8

DATED JULY 17, 2002, AND RECORDED IIN VOLUME 466, PAGE 605, O FTHE OFFICIAL RECORDS OF WHARTON COUNTY, TEXAS, more commonly known as 1913 Kelving Way Court, Wharton, Texas shall be sold under the following terms and conditions:

1. The property shall be sold for a price that is mutually agreeable to CYNTHIA SINATRA and FRANCIS WAYNE SINATRA.

2. CYNTHIA SINATRA and shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and CYNTHIA SINATRA shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by CYNTHIA SINATRA.

3. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows: 50% to CYNTHIA SINATRA, and

50% to FRANCIS WAYNE SINATRA

**Provisions Dealing with Sale of 9706 Hensel Road, Beverly Hills Area, California**

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at LOT 9 OF TRACT NO. 21845, IN THE CITY OF LOS ANGELES, COUNTYF OF LOST ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 619, PAGES 83 AND 84 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, more commonly called 9706 Hensel Road, Beverly Hills, California 90210, shall be sold under the following terms and conditions:

1. The property shall be sold for a price that is mutually agreeable to CYNTHIA SINATRA and FRANCIS WAYNE SINATRA.

9

2. FRANCIS WAYNE SINATRA shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and FRANCIS WAYNE SINATRA shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by FRANCIS WAYNE SINATRA.

3. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:

50% to CYNTHIA SINATRA, and

50% to FRANCIS WAYNE SINATRA

Judgment to Equalize Division

For the purpose of a just and right division of property made in this decree, IT IS FURTHER ORDERED AND DECREED that CYNTHIA SINATRA is awarded judgment of FIVE HUNDRED THOUSAND DOLLARS AND NO/100 DOLLARS ($500,000.00) against , FRANCIS WAYNE SINATRA payable in accordance with the terms of the closing documents ordered in this decree to be executed, with interest at five percent (5%) per year, compounded annually from the date of judgment, for which let execution issue.

This judgment is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support.

Spousal Maintenance

The Court finds that under the circumstances presented in this case, CYNTHIA SINATRA is eligible for spousal maintenance under the provisions of Texas Family Code chapter 8. Accordingly, FRANCIS WAYNE SINATRA is ordered to pay as spousal maintenance the sum of five thousand dollars ($5,000.00) per month to CYNTHIA SINATRA, with the first payment being

10

202

due on July 1, 2014, and a like amount being due 1st of each consecutive month thereafter until the earliest of one of the following events occurs:

1. 12 monthly payments are made;

2. death of either CYNTHIA SINATRA or FRANCIS WAYNE SINATRA;

3. remarriage of CYNTHIA SINATRA; or

4. further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by CYNTHIA SINATRA.

Payment shall be made by FRANCIS WAYNE SINATRA directly to CYNTHIA SINATRA by cash, cashier's check, money order, or direct deposit into a bank account designated, in writing, by CYNTHIA SINATRA.

Attorney's Fees

The Court finds that CYNTHIA SINATRA has incurred $56,000.00 as attorney's fees, expenses, and costs. This amount includes the $39,550.00 amount awarded and ordered in the Interlocutory Order-Common Law Marriage of August 12, 2013. IT IS ORDERED that good cause exists to award John C. Maher, Jr. a judgment in the amount of $56,000.00 for attorney's fees. It is further ORDERED that FRANCIS WAYNE SINATRA is given a credit against this in the total amount of $32,000.00 as it was paid under a prior Order resulting in an amount due and owing to John C. Maher in the cumulative total of $24,000.00.

Accordingly, John C. Maher is hereby granted a judgment against FRANCIS WAYNE SINATRA in the total amount of TWENTY-FOUR THOUSAND AND NO/100 DOLLARS ($24,000.00). Execution shall not issue on this judgment, provided FRANCIS WAYNE SINATRA timely pays to John C. Maher, Jr. at 212 E Burleson Street, Wharton, Texas 77488, the sum of $4,000.00 per month, for a period of six (6) months, beginning July 1, 2014 and on the 1st

11

203

of each and every month thereafter until either $24,000.00 is paid or 6 monthly payments are made. Subject to the above forebearance of execution, John C. Maher, Jr. may enforce this judgment for fees, expenses, and costs in the attorney's own name by any means available for the enforcement of a judgment for debt.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that all obligations and duties for the payment of temporary spousal support through June 1, 2014 imposed by the temporary orders of this Court that are not yet discharged shall survive this judgment, and independent enforcement may be sought.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all

12

Final Decree CLEAN (6-23-14)

204

parties and is appealable.

*Date of Judgment*

This divorce judicially PRONOUNCED AND RENDERED in court at Wharton, WHARTON County, Texas, on June 3, 2014 and further noted on the court's docket sheet on the same date, but signed on _____6/24/14_____.

_____
Randy Clapp,
Presiding Judge of the 329th Judicial District Court

13

205

**APPROVED AS TO FORM ONLY:**

JOHN C MAHER JR
212 E Burleson Street
Wharton, Texas 77488
Tel: (979) 531-0322
Fax: (979) 531-0355

By:_____
    John C. Maher, Jr.
    Attorney for CYNTHIA SINATRA
    State Bar No. 12833290
    E-Mail: johncmaher@sbcglobal.net

The Law Office of Warren Cole
3355 West Alabama St., Suite 825
Houston, TX 77098-1875
Tel: (713) 275-4444
Fax: (713) 400-9144

Digitally signed by: Warren Cole
DN: CN = Warren Cole email =
warren@warcolelaw.com C = AD O = Law
Office of Warren Cole
Date: 2014.06.23 15:45:30 -06'00'

By:_____
    Warren Cole
    Attorney for FRANCIS WAYNE SINATRA
    State Bar No. 04549500
    E-Mail: warren@warcolelaw.com

14

206

# APPENDIX
# A

FILED
at 9:00 o'clock A M.

AUG 12 2013

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO., TEXAS
By_____ Deputy

NO. 46,184

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CYNTHIA SINATRA | § | 329TH JUDICIAL DISTRICT |
| AND | § | |
| FRANCIS WAYNE SINATRA | § | WHARTON COUNTY, TEXAS |

## INTERLOCUTORY ORDER-COMMON LAW MARRIAGE

On July 15 and 16, 2013 the Court heard this case.

*Appearances*

Petitioner, CYNTHIA SINATRA, appeared in person and through attorney of record, John C. Maher, Jr., and announced ready for trial.

Respondent, FRANCIS WAYNE SINATRA, appeared in person and through attorney of record, Warren Cole, Houston, and announced ready for trial.

*Record*

The record of testimony was duly reported by the court reporter for the 329th Judicial District Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

1

208

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Informal Marriage*

The Court finds that CYNTHIA SINATRA, Petitioner, and FRANCIS WAYNE SINATRA, Respondent, entered into an informal marriage on April 27, 2002.

<u>Attorney's Fees</u>

The Court finds that CYNTHIA SINATRA has incurred $39,550.00 as attorney's fees, which were necessary as support for CYNTHIA SINATRA. IT IS ORDERED that good cause exists to award John C. Maher, Jr. a judgment in the amount of $39,550.00 for attorney's fees, with interest at 6% percent per year compounded annually from the date this Interlocutory Order-Informal Marriage is signed until paid. The judgment, for which let execution issue, is awarded against FRANCIS WAYNE SINATRA, and FRANCIS WAYNE SINATRA is ORDERED to pay the fees, and court costs, and interest to John C. Maher, Jr. at 212 E Burleson Street, Wharton, Texas 77488 by cash, cashier's check, or money order on or before 5:00 p.m., August 15, 2013. John C. Maher, Jr. may enforce this judgment for fees, expenses, and costs in the attorney's own name by any means available for the enforcement of a judgment for debt.

Signed on this the ___8/12___, 2013.

_____
Randy Clapp,
Presiding Judge of the
329th Judicial District Court

2

# APPENDIX
# B

In the Matter of the Marriage of
Cynthia Sinatra
Francis Wayne Sinatra

Wife's:
Inventory and Appraisement
Proposed Division


PETITIONER'S
EXHIBIT
｜〇○

In the 329th
Judicial District Court
Wharton County, Texas

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | | Description | Date | Value | To Husband | To Wife |
| 2 | | **Community Property:** | | | | |
| 3 | | | | | | |
| 4 | | **Real Property:** | | | | |
| 5 | | Wife's residence,1913 Kelving Way, Acquired 1/20/2005 | | 433,215 | | |
| 6 | | Less: Mortgage Amegy 33225, note not current | 05/19/14 | (251,536) | | |
| 7 | | **Net Value of 1913 Kelving Way** | | **181,679** | 181,679 | |
| 8 | | | | | | |
| 9 | | H's residence, 9706 Hensel Road, Beverly Hills, Ca. | | 4,500,000 | | |
| 10 | | Less: Mortgage: CNB Finance | | (2,500,000) | | |
| 11 | | **Net Value of 9706 Hensel Road** | | **2,000,000** | 2,000,000 | |
| 12 | | Net Value of Real Estate | | 2,181,679 | | |
| 13 | | **Motor Vehicles:** | | | | |
| 14 | | 2006 Jaguar #10682 INO: Wife | | 4,000 | | 4,000 |
| 15 | | 2014 Lexus #X71114 GS460 INO: Husband P12/30/13 | | 72,000 | | 72,000 |
| 16 | | **Accounts with Financial Institutions:** | | | | |
| 17 | | Prosperity Bank, Joint #X 7807 | 05/10/14 | 200 | | 200 |
| 18 | | **Notes:** | | | | |
| 19 | | Community Asset: Promissory Note Wife to Husband | | 40,000 | | |
| 20 | | Less: Community Asset: Promissory Note Wife to Husband | | (40,000) | | |
| 21 | | **Jewelry** | | | | |
| 22 | | In Possession of H acquired since DOM | | TBD | | |
| 23 | | **Fire Arms** | | | | |
| 24 | | In Possession of W | | 600 | | 600 |
| 25 | | **Household Furniture and Furnishings** | | | | |
| 26 | | Furniture and Furnishings in possession of H | | 500,000 | 500,000 | |
| 27 | | Furniture and Furnishings in possession of Wife | | 20,000 | | 20,000 |
| 28 | | Electronics in possession of Wife | | 5,000 | | 5,000 |
| 29 | | **Business Interest** | | | | |
| 30 | | 100% of Anomaly Limited, LLC INO: Husband | | 360,000 | 360,000 | |
| 31 | [4] | 20.09 % of FSE Hold-Co, LLC INO: Husband | Per H | 1,700,000 | 1,700,000 | |
| 32 | | 100% FWS Realty Delaware, LLC | Per H | 285,000 | 285,000 | |
| 33 | | | | | | |
| 34 | | **Miscellaneous** | | | | |
| 35 | | Membership INO: W, Wharton Country Club | | 300 | | 300 |
| 36 | | **Reimbursement Claims** | | | | |
| 37 | | Community Claim against H's Separate | | | | |
| 38 | [1&4] | #1 CC Re: formation of FSE (Alternative Claim) | | 1,756,569 | 1,756,569 | |
| 39 | [2] | #2 CC Re: Excess Anomaly Costs | | 1,800,000 | 1,800,000 | |
| 40 | | #3 Voluntary Support for out of wedlock children | | TBD | | |
| 41 | | **Credit Cards** | | | | |
| 42 | | Chase Visa #X 4644 INO: Wife | 04/09/14 | (5,449) | | (5,449) |
| 43 | | Tx Gulf MC #X 2017 INO: Wife | 03/02/14 | (6,283) | | (6,283) |
| 44 | | Exxon Mobile #X 8900 INO: Wife | 05/18/14 | (12) | | (12) |
| 45 | | Macy's #X 422-0 INO: Wife | 04/02/14 | (899) | | (899) |
| 46 | | Saks First #X 298 INO: Wife | 04/02/14 | (1,348) | | (1,348) |
| 47 | | FIA #X 1111 INO: Wife | 05/10/14 | - | | |
| 48 | | **Personal Debts of Wife to the following:** | | | | |
| 49 | | Robert McMurrey | | (5,800) | | (5,800) |
| 50 | | Karen and Junior Herzik | | (3,000) | | (3,000) |
| 51 | | Wanda White | | (17,500) | | (17,500) |

In the Matter of the Marriage of
Cynthia Sinatra
Francis Wayne Sinatra

Wife's:
Inventory and Appraisement
Proposed Division

In the 329th
Judicial District Court
Wharton County, Texas

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | | Description | Date | Value | To Husband | To Wife |
| 52 | | Jessica McMurrey | | | (2,820) | | (2,820) |
| 53 | | John Brink | | (35,210) | | (35,210) |
| 54 | | El Campo Spraying | | (1,273) | | (1,273) |
| 55 | Reimbursement Claims | | | | | |
| 56 | | Community to Wife for note reduction | | (62,676) | | (62,676) |
| 57 | Attorney Fees and Costs | | | | | |
| 58 | | Wife – John C. Maher, Jr. | | | | |
| 59 | | Wife - Expert Charlie Gerhardt CPA | | (10,000) | | (10,000) |
| 60 | | Husband - Warren Cole | | | | |
| 61 | Lawsuits | | | | | |
| 62 | | By Credit Card against Wife, Estimate | | (5,000) | | (5,000) |
| 63 | | | | | | |
| 64 | Adjustment: | | | | | |
| 65 | [4] | Double Dip Eliminated FES and Claim For SFE | | (1,728,285) | (1,728,285) | |
| 66 | | Amount used is average of $1,700,000 and $1,756,569 | | | | |
| 67 | Income Taxes | | | | | |
| 68 | | Federal Income and Gift Taxes | | | All | |
| 69 | | Percentage to Wife | 50% | | | |
| 70 | | | | | | |
| 71 | Judgment to Equalize from Husband to Wife | | | | (3,455,066) | 3,455,066 |
| 72 | | | | | | |
| 73 | | Total | | 6,799,794 | 3,399,897 | 3,399,897 |
| 74 | | | | | 50% | 50% |
| 75 | TBD =To Be Determined | | | | | |
| 76 | | | | | | |
| 77 | Husband's Separate Property as agreed to Previous Divorce Decree | | | | | |
| 78 | | H's former Residence 9759 Suffolk Sold during Marriage | | TBD | | |
| 79 | | Unproved real property Idyllwild Calif. | | TBD | | |
| 80 | | Townhouse 820 South Gretna Green, Los Angeles, Calf | | TBD | | |
| 81 | | In Possession of H, including Sinatra music library | | 1,000,000 | | |
| 82 | | 21.75% of Bristol Production | | TBD | | |
| 83 | | 33% of Essex Production LP | | TBD | | |
| 84 | | 27% of Sheffield Enterprises, Inc. | | TBD | | |
| 85 | | Francis W Sinatra Trust dated 6/15/1998 restated 9-20-2005 | | | | |
| 86 | | Dorchester Real Estate LLC dated 11/30/11 | | | | |
| 87 | | Interest in Summerset Real-estate Trust | | TBD | | |
| 88 | | Interest in Franksinatra.com | | TBD | | |
| 89 | | Interest in AK Cellars Winery | | TBD | | |
| 90 | | Interest in Somerset Distributors, Inc. | | TBD | | |
| 91 | | Interest in Somerset Trust | | TBD | | |
| 92 | | Screen Actors' Guild (SAG) | | TBD | | |
| 93 | | American Federation of Television & Radio Artists (AFTRA) | | TBD | | |
| 94 | | American Federation of Musicians (AFM) | | TBD | | |
| 95 | | First Colony Life Ins #X 3436 INO: Husband | | TBD | | |
| 96 | | First Colony Life Ins #X 0893 INO: Husband | | TBD | | |
| 97 | | Union Central Life Ins #X 1827 INO: Husband | | TBD | | |
| 98 | | American Fed Mus Local 47 Ins INO: Husband | | TBD | | |
| 99 | | At DOM all personal property | | | | |
| 100 | | Jewelry in Possession at DOM | | | | |

In the Matter of the Marriage of
Cynthia Sinatra
Francis Wayne Sinatra

Wife's:
Inventory and Appraisement
Proposed Division

In the 329th
Judicial District Court
Wharton County, Texas

|  | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 |  | Description | Date | Value | To Husband | To Wife |
| 101 |  |  |  |  |  |  |
| 102 |  | 100% FWS Realty Delaware, LLC formed 2-2-2006 created from Buena Park Promenade property? |  |  |  |  |
| 103 |  |  |  |  |  |  |
| 104 |  | **Wife's Separate Property** |  |  |  |  |
| 105 |  | 3420 Old Caney Road Equity to 1913 Kelving Way, sold proceeds to 1913 Kelving Way |  |  |  | 62,676 |
| 106 |  | Cash Value Duval Ins. #x1428U INO Wife, BB Brink insured |  |  |  | 595 |
| 107 |  | Cash Value Duval Ins. #x1427U INO Wife, VE Brink Insured |  |  |  | 762 |
| 108 |  | Cash Value Duval Ins. #x7174U INO Wife, Cynthia insured |  |  |  | 4,080 |
| 109 |  | Cash Value Duval Ins. #x1219, INO Wife, Cynthia Insured |  |  |  |  |
| 110 |  | Cynthia Sinatra - Attorney, Sole Proprietorship |  | 10 |  | 10 |
| 111 |  | At DOM all personal property |  |  |  |  |
| 112 |  | Jewelry in possession of Wife at DOM |  |  |  |  |
| 113 |  |  |  |  |  |  |
| 114 |  |  |  |  |  |  |
| 115 |  | **Community Property Claim Against Husband's Separate Property** |  |  |  |  |
| 116 | [1] | Estimated Value of Community Property Assets Transferred to Separate Property FSE |  |  |  | 1,756,569 |
| 117 |  | Determined as the NPV of $250,000 for 10 years at 15% |  |  |  |  |
| 118 | [2] | Excess Anomaly Costs between $11,845 and 18,508 per month for 144 months of the marriage |  |  |  |  |
| 119 |  | Average Rounded to $1,800,000 |  |  |  |  |
| 120 |  | Anomaly costs in excess of income per Recap $7,500 per month for 4 years $360,000 |  |  |  |  |
| 121 |  |  |  |  |  |  |
| 122 | [3] | in 2007 moved separate property to FSE, Community Income Lost Ann $127,469 for 6.5 years $1,413,548 |  |  |  |  |
| 123 |  |  |  |  |  |  |
| 124 |  |  |  |  |  |  |
| 125 |  |  |  |  |  |  |
| 126 |  |  |  |  |  |  |
| 127 |  |  |  |  |  |  |
| 128 |  |  |  |  |  |  |

FILED

at 1/OU o'clock /1 M.

AUG 1 4 2014

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO., TEXAS
By_____ Deputy

NO. 46,184

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CYNTHIA SINATRA | § | 329TH JUDICIAL DISTRICT |
| AND | § | |
| FRANCIS WAYNE SINATRA | § | WHARTON COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Cynthia Sinatra had been a resident of Wharton County for at least 90 days and a domiciliary of the State of Texas for at least 6 months at the time the original petition in this cause was filed.
2. Cynthia Sinatra and Francis Wayne Sinatra were formally divorced by an agreed decree of divorce in the 329th Judicial District Court of Wharton County, Texas on March 29, 2001.
3. After the agreed divorce decree was entered, Cynthia Sinatra and Francis Wayne Sinatra agreed to be married. This informal marriage agreement occurred on or before April 27, 2002.
4. After the informal marriage agreement was made and on or before April 27, 2002, Cynthia Sinatra and Francis Wayne Sinatra lived together in Texas as husband and wife, and there represented to others that they were married.
5. The informal marriage relationship continued into 2012. The parties separated in 2012. This suit was commenced before the second anniversary of the date on which the parties separated and ceased living together.
6. The marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.
7. The home in Beverly Hills was acquired during the informal marriage and has not been shown by clear and convincing evidence to be the separate property of either party. Its value is $4,500,000, reduced by a mortgage debt of $2,500,000.
8. The parties have agreed that the home in Wharton, Texas is owned by each of them equally (50-50) as undivided separate property, and that the mortgage debt secured by that home is owed by each of them equally (50-50) as undivided separate debt.
9. The 2006 Jaguar was acquired during the informal marriage and has a value of $4,000.
10. The 2014 GMC Acadia was acquired during the informal marriage and has a net value of $4,000.
11. The home in Beverly Hills contains contents, including furniture, furnishings, clothing, jewelry, personal effects, art and collectibles which were acquired during the informal marriage and which have a value of $500,000.
12. The home in Wharton contains contents, including furniture, furnishings, clothing, jewelry, personal effects, art and collectibles which were acquired during the informal marriage and which have a value of $25,600.
13. Frances Wayne Sinatra has possession and control of unspent cash and earnings paid to

1

224

him during the informal marriage and deposited in bank accounts in the name of the Francis W Sinatra Trust not revealed or identified during the trial in the amount of at least $1,000,000.

14. The Francis W Sinatra Trust is a revocable living trust, the funding of which from time to time during the informal marriage did not operate to convert any of the community property of the parties into the separate property of Francis Wayne Sinatra.

15. Cynthia Sinatra has possession and control of a deposit account at Prosperity Bank containing unspent cash and earnings paid to her during the informal marriage with a balance of $200.

16. The items identified on lines 78-102 (not including line 85, the Francis W Sinatra Trust) of Appendix B to the decree in this cause are shown by clear and convincing evidence to be the separate property of Francis Wayne Sinatra.

17. The items identified on lines 106-109 of Appendix B to the decree in this cause are shown by clear and convincing evidence to be the separate property of Cynthia Sinatra.

18. The Wharton Country Club membership was acquired during the informal marriage and has a value of $300.

19. The debts listed on lines 41-54 of Appendix B were incurred by Cynthia Sinatra during the informal marriage and have the balances owed as stated in Appendix B.

20. The promissory note from Francis Wayne Sinatra to the Nancy Sinatra Lambert Trust was incurred during the informal marriage and has a balance of $250,000, plus accrued interest.

21. Cynthia Sinatra will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs. The parties have been married to each other for 10 years or longer. Cynthia Sinatra, on dissolution of the marriage, lacks the ability to earn sufficient income to provide for her minimum reasonable needs.

22. Cynthia Sinatra will reasonably have the ability to earn sufficient income to provide for her minimum reasonable needs 12 months after the dissolution of the marriage.

23. An amount of $5,000 per month paid as maintenance will reasonably assist Cynthia Sinatra in providing for her minimum reasonable needs for 12 months after the dissolution of the marriage.

24. Cynthia Sinatra incurred reasonable and necessary attorney's fees in this cause in the amount of $56,000, $32,000 of which have already been paid by Francis Wayne Sinatra.

25. This court has jurisdiction.

26. The parties were informally married by April 27, 2002.

27. Grounds exist for the divorce.

28. The division of the community property and debts of the parties in the Final Decree signed by the court is a just and right division. The award of attorney's fees and costs is reasonable and fair.

Signed on ___8/13___, 2014

_____
Judge Presiding

2

225

Petitioner's Exhibit No. 111
Final Consent Decree of Divorce
Cause No. 36,915-S

PETITIONER'S EXHIBIT

111

NO. 36,519-S

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CYNTHIA WHITE SINATRA | § | 329TH JUDICIAL DISTRICT |
| AND | § | |
| FRANCIS WAYNE SINATRA | § | WHARTON COUNTY, TEXAS |

## FINAL CONSENT DECREE OF DIVORCE

On _Mar.29_, 2001, the Court heard this case.

1.  **APPEARANCES**
    Petitioner, CYNTHIA WHITE SINATRA, having agreed to the terms of this Final Consent Decree of Divorce, as evidenced by her signature, and that of her attorney of record, DONN C. FULLENWEIDER, did not otherwise appear.

    Respondent, FRANCIS WAYNE SINATRA, appeared in person and through attorney of record, WARREN COLE.

2.  **RECORD**
    The making of a record of testimony was waived by the parties with the consent of the Court.

3.  **JURISDICTION AND DOMICILE**
    The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. All persons entitled to citation were properly cited.

4.  **JURY**
    A jury was waived, and all questions of fact and of law were submitted to the Court.

5.  **NO CHILD OF THE MARRIAGE**
    The Court finds that there is no child of the marriage of Petitioner and Respondent and that none is expected.

6.  **DIVORCE**
    IT IS ORDERED AND DECREED that CYNTHIA WHITE SINATRA, Petitioner, and FRANCIS WAYNE SINATRA, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

S:\DCF\Sinatra\PLEADINGS\Final Decree of Divorce.wpd

1



FILED
at 11:35 o'clock A M.

MAR 29 2001

DENICE KUCERA MALOTA
DISTRICT CLERK, WHARTON CO. TEXAS
By_____ Deputy



## 7. *PARTITION OR EXCHANGE AGREEMENT-NO COMMUNITY PROPERTY.*

The Court find that the Post-Marital Agreement signed by CYNTHIA WHITE SINATRA and FRANCIS WAYNE SINATRA on November 16, 2000, a copy of which is attached hereto as Appendix I, is valid and enforceable. Based upon said agreement, the Court finds that there is no community property to be divided by this Court and the separate property of the parties as set forth in Appendix I is confirmed to be that respective party's separate property. At the parties' request, Appendix I is to be sealed with the notation on the cover of the sealed envelope that it is to be opened only by court order.

## 8. *ADDITIONAL PAYMENTS TO CYNTHIA WHITE SINATRA*

In addition to the benefits and obligations set forth in Appendix I, it is agreed and ORDERED that FRANCIS WAYNE SINATRA shall pay to CYNTHIA WHITE SINATRA the additional tax free sum of $35,000.00. It is agreed and ORDERED that all of the monetary obligations of FRANCIS WAYNE SINATRA under the terms of the Post Marital Agreement (Appendix I) shall be paid to CYNTHIA WHITE SINATRA pursuant to the following terms.

1. $20,000 shall be paid to CYNTHIA WHITE SINATRA on the 2nd business day following the time this Final Consent Decree of Divorce is signed by the Judge; and,

2. The 24 monthly payments of $5,000.00 each, as provided in paragraph 6.2.B. of Appendix I, shall be paid to CYNTHIA WHITE SINATRA in accordance with the Post Marital Agreement; and

3. The balance of the monetary obligations owed to CYNTHIA WHITE SINATRA called for in the Post Marital Agreement (Appendix I) as well as the additional $15,000 balance of the additional payment called for above, shall be paid to CYNTHIA WHITE SINATRA within 14 days following the date the Court signs this Final Consent Decree of Divorce.

## 9. *COURT COSTS*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

## 10. *ATTORNEY FEES*

IT IS ORDERED that FRANCIS WAYNE SINATRA shall pay directly to DONN C. FULLENWEIDER, as provided by the Agreement (Appendix I) $15,000 as attorneys fees and that DONN C. FULLENWEIDER shall have a judgment for the said sum at the legal rate of interest until full paid.

2

**11. CLARIFYING ORDERS**
Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

**12. RELIEF NOT GRANTED**
IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied.

**13. DATE OF JUDGMENT - SIGNED AND RENDERED.** This Decree of Divorce SIGNED AND RENDERED in open court at the Courthouse at 100 Milam Street, Wharton, Wharton County, Texas, on this _29_ day of March, 2001.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM ONLY:**

Piro & Lilly, L.L.P.
1400 Post Oak Blvd. Suite 600
Houston, Tx 77056-3008
Phone: (713) 966-4444
Fax: (713) 966-4466

By:_____
WARREN COLE
Attorney for Respondent
State Bar No. 04549500

The Fullenweider Firm
4265 San Felipe
Suite 1400
Houston, Texas 77057
Phone: (713) 624-4100
Fax: (713) 624-4141

By:_____
DONN C. FULLENWEIDER
Attorney for Petitioner
State Bar No. 075140000

3

**APPROVED AND CONSENTED TO
AS TO BOTH FORM AND SUBSTANCE:**

FRANCIS WAYNE SINATRA

CYNTHIA WHITE SINATRA

4

## Post Marital Agreement

The parties to this Post marital Agreement are FRANCIS WAYNE SINATRA ("FRANK") of Beverly Hills, California and CYNTHIA WHITE SINATRA ("CYNTHIA"), of Beverly Hills, California and Wharton, Wharton County Texas.

### Stipulations

1.  The parties are entering into this agreement in accordance with the laws of the State of California and Article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, as amended.

2.  The parties acknowledge and agree that they are making and entering into this agreement voluntarily and without the intention to defraud or prejudice preexisting creditors.

3.  The parties own no community at the time of this agreement based upon the "Post-Marital Property Agreement" (herein after referred to as the "1999 Agreement") previously executed by FRANK on February 4, 1999 and CYNTHIA on February 9, 1999. The parties acknowledge that the 1999 Agreement is valid and enforceable. However, the parties desire to modify the 1999 Agreement by the terms set forth in this Post Marital Agreement and it shall supercede and replace, in all respects, all of the terms contained in the 1999 Agreement.

5.  The parties intend to clarify their respective separate property rights to eliminate any uncertainty about those rights.

6.  The parties intend by this agreement that no future community property will be created during the remainder of their marriage and none are in existence in the event of a divorce.

7.  The parties further acknowledge that at the time of the signing of this agreement there is a pending action for Dissolution of the Marriage filed by FRANCIS WAYNE SINATRA under case no. BD328642 in the Superior Court of Los Angeles County, California and pending suit for divorce styled "IN THE MATTER OF THE MARRIAGE OF CYNTHIA WHITE SINATRA AND FRANCIS WAYNE SINATRA" filed by CYNTHIA WHITE SINATRA under Cause No. 36,519-S in the 329th District Court of Wharton County, Texas. It is the intent of the parties that, upon the execution of this Post Marital Agreement, a Suit for Declaratory Judgment and Order will be filed in Wharton County which will judicially confirm that this Post Marital Agreement is valid and enforceable in Texas and California, and any other jurisdiction in which enforcement may be sought by either party. However, the

Page 1 of 24

failure of securing such Declaratory order shall in no way affect the enforceability or validity of this Post Marital Agreement.

In consideration of the mutual promises, agreements, partitions, exchanges, releases, and waivers contained in this agreement and in consideration of the parties' desire to establish certain rights and obligations by this agreement, and with the intent to be fully bound by the terms of this agreement, the parties covenant, agree, and contract as follows:

## ARTICLE 1
### Statement of Facts

### 1.1 *Property of Parties*
FRANK and CYNTHIA own as their respective separate property all of that certain estate, real, personal, and mixed, described in Schedules A and B attached to this agreement.

### 1.2 *Disclosure*
Each party represents and warrants to the other party that he or she has, to the best of his or her ability, made to the other party a fair and reasonable disclosure of the nature and extent of the property of the parties, including values, and financial obligations, contingent or otherwise, and that the disclosure includes but is not limited to the property set forth in Schedules A and B attached to this agreement and other documentation exchanged between the parties before their execution of this agreement. Each party additionally acknowledges that he or she has adequate knowledge of the property and financial obligations of the parties before the execution of this agreement. Furthermore, and before the execution of this agreement, each party has previously offered to provide, or has provided, to the other party all information and documentation pertaining to all property, including income and value, and all financial obligations that have been requested by the other party. Each party acknowledges that he or she has, or reasonably could have had, full and complete knowledge of the estate of the parties and of all financial obligations of the estate of the parties.

## ARTICLE 2
### Separate Property of the Parties

### 2.1 *Separate Property of FRANK*
The Parties agree that FRANK owns and has the exclusive right to possess and enjoy as his sole and separate estate, free from any claim of CYNTHIA, the property listed in Schedule A, which is attached to this agreement and incorporated herein in it for all purposes. In addition the assets listed on Schedule A, the following shall constitute the separate property of FRANK, to-wit:

FWS

Page 2 of 24

CWS

A.     all mutations, changes, and increases in kind or in value of FRANK's separate property since October 15, 1998;

B.     all increases in kind or in value of FRANK's separate property resulting from the time, talent, labor, or personal efforts of either or both parties since October 15, 1998;

C.     all income and revenues from FRANK's separate property, all income and property acquired as a result of FRANK's separate property, and all income and property resulting from the reinvestment of that income, including interest and dividend income, since October 15, 1998;

D.     all of FRANK's interest in or claim to any future profits of any partnership, joint venture, or corporation owned by FRANK on October 15, 1998 or acquired by FRANK following the marriage, whether the profits are distributed or undistributed;

E.     all profits, commissions, distributions, revenues, royalties, wages, salary, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received by FRANK after October 15, 1998, and all income and property derived from the reinvestment of FRANK's profits, commissions, distributions, revenues, royalties, wages, salary, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received since October 15, 1998, together with all interest and dividend income received by FRANK during the marriage;

F.     all contributions to all individual retirement accounts, all retirement plans, and all other employee benefit plans, including, but not limited to the Screen Actors Guild (SAG) Pension Plan and American Federation of Television and Radio Artists (AFTRA) Pension Plan, made by or on behalf of FRANK after October 15, 1998, together with all increases in value of all such plans;

G.     all interests in any trust in which FRANK has an interest, including but not limited to all corpus of those trusts, as well as all distributed and undistributed income from those trusts;

H.     all recovery for personal injuries and/or property losses sustained by FRANK during the parties' marriage, including any recovery for loss of earning capacity since October 15, 1998; and

I.     all property and property rights acquired by FRANK by gift, devise, or descent;

J.     All income, from any source, earned by FRANK since October 15, 1998.

CYNTHIA partitions and exchanges to FRANK all her community property interest, if any, in and to all the property herein above listed under Paragraph 2.1, as well as, the property listed in Schedule A, together with any insurance policies covering the property and any escrow accounts that relate to it. CYNTHIA grants, releases, and confirms to FRANK and to his heirs and assigns all right, title, and interest in and claims to the property listed in Schedule A, to have and to hold the same, with all and singular the hereditaments and appurtenances thereto belonging forever.

FWS                                Page 3 of 24                                CWS

**2.2**    *Separate Property of CYNTHIA*
The parties agree that CYNTHIA owns and has the exclusive right to possess and enjoy as her sole and separate estate, free from any claim of FRANK, all the property listed in Schedule B, which is attached to this agreement and incorporated in it for all purposes. In addition the assets listed on Schedule B, the following shall constitute the separate property of CYNTHIA, to-wit:

A.    all mutations, changes, and increases in kind or in value of CYNTHIA's separate property since October 15, 1998;

B.    all increases in kind or in value of CYNTHIA's separate property resulting from the time, talent, labor, or personal efforts of either or both parties since October 15, 1998;

C.    all income and revenues from CYNTHIA's separate property, all income and property acquired as a result of CYNTHIA's separate property, and all income and property resulting from the reinvestment of that income, including interest and dividend income, since October 15, 1998;

D.    all of CYNTHIA's interest in or claim to any future profits of any partnership, joint venture, or corporation owned by CYNTHIA on October 15, 1998 or acquired by CYNTHIA following the marriage, whether the profits are distributed or undistributed;

E.    all profits, commissions, distributions, revenues, royalties, wages, salary, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received by CYNTHIA after October 15, 1998, and all income and property derived from the reinvestment of CYNTHIA's profits, commissions, distributions, revenues, royalties, wages, salary, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received since October 15, 1998, together with all interest and dividend income received by CYNTHIA during the marriage;

F.    all contributions to all individual retirement accounts, all retirement plans, and all other employee benefit plans made by or on behalf of CYNTHIA after October 15, 1998, together with all increases in value of all such plans;

G.    all interests in any trust in which CYNTHIA has an interest, including but not limited to all corpus of those trusts, as well as all distributed and undistributed income from those trusts;

H.    all recovery for personal injuries and/or property losses sustained by CYNTHIA during the parties' marriage, including any recovery for loss of earning capacity since October 15, 1998; and

I.    all property and property rights acquired by CYNTHIA by gift, devise, or descent

J.    All income, from any source, earned by CYNTHIA since October 15, 1998.

FRANK partitions and exchanges to CYNTHIA all his community property interest, if any, in and to all the property herein above listed under Paragraph 2.2, as well as,

FWS                              Page 4 of 24                              CWS

the property listed in Schedule B, together with all insurance policies covering the property and all escrow accounts that relate to it. FRANK grants, releases, and confirms to CYNTHIA and to her heirs and assigns all right, title, and interest in and claims to the property listed in Schedule B, to have and to hold the same, with all and singular the hereditaments and appurtenances thereto belonging forever.

### 2.3   *Asset Descriptions*
The parties have tried to use the correct legal description for each asset listed in any schedule attached to this agreement. If any asset is incorrectly described, the description used is adequate for the purposes of this agreement and accompanying schedules, and the parties agree to execute any additional paperwork required to confirm ownership in the name of the party in whose schedule the asset appears.

ARTICLE 3

Income or Property Derived from Separate Property

### 3.1   *Income from FRANK's Separate Property*
CYNTHIA agrees that all income, changes, mutations, and increases in kind or in value of FRANK's separate property from October 15, 1998 and following the execution of this agreement and all property that he may hereafter acquire as his separate property, including all property acquired as a result of the reinvestment of income from separate property, will be the separate property of FRANK.

### 3.2   *Income from CYNTHIA's Separate Property*
FRANK agrees that all income, changes, mutations, and increases in kind or in value of CYNTHIA's separate property from October 15, 1998 and following the execution of this agreement and all property that she may hereafter acquire as her separate property, including all property acquired as a result of the reinvestment of income from separate property, will be the separate property of CYNTHIA.

### 3.3   *Waiver of Claims*
Each party agrees that the respective separate property of the parties will be free from all claims that the other party may have before the date of this agreement, as well as all claims that may arise following the execution of this agreement. Neither party will be entitled to any reimbursement of any kind or nature (including time, toil, talent, and labor), including but not limited to any contribution by a party from his or her separate estate for the living expenses of the parties, for the ordinary and customary maintenance of the separate property of the other party, for any sums expended on or for the benefit of the other party, or for any contribution made by the party from his or her separate estate for the purchase of, or discharge of any lien or encumbrance on, or improvement of the separate property of the other party. Any money used for the benefit of the other party will be presumed to be a gift to the other party, as contrasted with a payment for which reimbursement or repayment

FWS

CWS

is later expected, unless the parties agree otherwise in writing. This waiver applies during the lifetime of both parties, as well as on the death of either or both parties. This waiver extends to any rights, whether choate or inchoate, that may arise under the laws of Texas or any other jurisdiction. Each party further agrees that, by signing this agreement and accepting any benefit whatsoever under it, he or she is estopped from making any claim of any kind at any time to any separate property or the separate estate of the other party, except as may expressly be provided for in this agreement.

FRANK waives and releases all rights of reimbursement of any kind or nature (including time, toil, talent, and labor) that he might presently or in the future have or claim on behalf of his separate estate or the community estate, if any, against the separate property estate of CYNTHIA. CYNTHIA waives and releases all rights of reimbursement of any kind or nature (including time, toil, talent, and labor) that she might presently or in the future have or claim on behalf of her separate estate or the community estate, if any, against the separate property estate of FRANK.

**3.4**   *Income from Separate Property*
Income from separate property includes but is not limited to interest, rents, royalties, stocks, splits, and dividends, salary, bonuses, and other compensation. The parties agree that all income received during their marriage from the separate property owned by one or either of them, or that is thereafter acquired, will be and forever remain the separate property of the owner of the separate property producing the income or from which the income is derived. Each party forever releases, relinquishes, and renounces any interest in such income derived from the separate property of the other party in consideration of the reciprocal agreement and release, relinquishment, and renunciation by the other party.

**ARTICLE 4**
Liabilities

All liabilities and obligations both contingent and absolute of either of us that exist at the date of this agreement shall be enforceable against and discharged from the separate property of the party who incurred the particular liability or obligation and shall not be enforceable against or dischargeable from the property of the other.

**ARTICLE 5**
Management of Properties

FWS                          Page 6 of 24                          CWS

### 5.1  Management of Properties

Each party has the full, free, and unrestricted right to manage the separate property over which he or she has control, including without limitation the right to convey or encumber the property; to dispose of it by sale, gift, or otherwise; and to deal with it without taking into consideration any rights or interests of the other party. If the joinder of FRANCIS WAYNE SINATRA or CYNTHIA WHITE SINATRA ("joining party") should be required by law in connection with the execution of any document by the other party with respect to the separate property of the other party, on request and from time to time, the joining party must execute all such documents necessary to effect the desires of the other party, including gift tax returns, but without any personal liability of the joining party. Neither party has the authority to encumber or dispose of the other party's separate property without the other party's express written consent.

### 5.2  Certain Events Not Evidence of Community Property

The following events may not, under any circumstances, be considered evidence of any intention to create community property:

A.  the filing of joint tax returns;

B.  the taking of title to property, whether real or personal, in joint tenancy or in any other joint or common form;

C.  the designation of one party by the other party as a beneficiary of his or her estate or as trustee or any other form of fiduciary;

D.  the combining or mixing by one party of his or her separate funds or property with the separate funds or property of the other party, including the pledging of joint or separate credit for the benefit of the other party's separate estate;

E.  any oral statement by either party;

F.  any written statement by either party, other than a written agreement that contains an explicit statement of the party's intent to change the party's separately owned property into jointly owned property or a written agreement designating a particular piece of property as a gift to the other party;

G.  the payment from the funds of either party for any obligations, including but not limited to the payment of mortgages, interest, real property taxes, repairs, or improvements on a separately or jointly held residence; and

H.  the joint occupation of a separately owned residence, even though designated as a homestead.

The provisions of this section 5.2 are not comprehensive.

### ARTICLE 6
Termination of Marriage by Court Order

### 6.1  Property to FRANK

FWS                           Page 7 of 24                           CWS

In the event the marriage of the parties is terminated, CYNTHIA agrees that FRANK will be awarded all his separate property, including all property described in this agreement as being the separate property of FRANK, as well as any and all property, income, or assets acquired by FRANK subsequent to the execution of this Post Marital Agreement. CYNTHIA agrees to release all interests or claims she may have in FRANK's separate property. CYNTHIA further agrees to execute any documents necessary to set aside and confirm to FRANK his separate property and to release any and all claims that CYNTHIA might have in and to FRANK's separate property.

### 6.2  *Property to CYNTHIA*

In the event the marriage of the parties is terminated, FRANK agrees that CYNTHIA will be awarded all her separate property, including all property described in this agreement as being the separate property of CYNTHIA, as well as any and all property, income, or assets acquired by CYNTHIA subsequent to the execution of this Post Marital Agreement. In addition, CYNTHIA shall receive and FRANK shall be obligated as follows:

A.     <u>Lump Sum Payment</u>. In consideration, and in exchange for compromises regarding the payment of Spousal Support by FRANK to CYNTHIA and release of all claims by both parties, FRANK shall pay to CYNTHIA the sum of Two Hundred Thousand Dollars ($200,000.00) within five (5) days of the parties marital status being terminated by court order. Said payment shall be tax-free to CYNTHIA and shall not be tax deductible by FRANK. Either party has the right to obtain a termination of marriage.

B.     <u>Spousal Support</u>. In addition to the lump sum payment stated above, FRANK shall pay to CYNTHIA as and for non-modifiable Spousal Support the sum of Five Thousand Dollars ($5,000.00) per month payable one-half (½) on the 1st and one-half (½) on the 15th days of each month for a period of twenty-four (24) consecutive months commencing on the 1st day of the first month following the termination of the parties marriage by the Court. Said Spousal Support shall terminate upon the death or remarriage of CYNTHIA, FRANK's death or twenty-four (24) months whichever shall first occur. The Spousal Support set forth herein is non-modifiable as to amount and duration. The jurisdictional limitation herein is absolutely non-modifiable and no Court shall have the power to set any support or extend support payments beyond the twenty-four (24) month period hereinabove set forth, irrespective of whether any such request was made prior to or subsequent to the expiration of the said twenty-four (24) month period. The Spousal Support set forth herein shall be non-taxable to CYNTHIA and not deductible by FRANK.

FWS                                              CWS

C.    <u>Occupancy of FRANK'S Residence</u>. The parties acknowledge that the parties are currently residing in FRANK's residence which has been confirmed as his sole and separate property and in which the CYNTHIA has no interest. Notwithstanding the foregoing, in the event either party or both parties should choose to separate and/or terminate the parties marital status, CYNTHIA and her two (2) minor children shall be allowed to remain as tenants, for no charge, in FRANK's residence until such time as both children have completed the balance of the then current school term in the year in which the parties have separated. By way of example, if the parties or either party chooses to separate in February 2002, and the children's school term ends at the end of June 2002, CYNTHIA and the minor children may remain in the residence with FRANK up to but no later than fourteen (14) days from the date the school term ends for whichever child has the latest school term ending date. The agreement by the parties that CYNTHIA and the minor children may remain in the residence until the completion of the children's current school term in the year in which the parties separate, shall not in any way alter or change the parties rights, obligations and agreements as set forth in this Post Marital Agreement. Nothing herein contained shall be deemed to create any right or interest by CYNTHIA in FRANK's present residence(s) or any future residence, and it is so **ORDERED**. In the event of the failure or refusal of CYNTHIA to vacate FRANK's residence in timely fashion, time being of the essence, and it becomes necessary for FRANK to take legal action for her removal therefrom, CYNTHIA shall be obligated for all costs, expenses and attorney's fees incurred by FRANK in seeking such removal. In that event, and at FRANK'S option, said costs, expenses and attorney's fees incurred by FRANK, shall be deducted from the lump sum payment set forth in Paragraph 6.2.A above, or from the Spousal Support set forth in Paragraph 6.2.B above.

FRANK agrees to release all interests or claims he may have in CYNTHIA's separate property. FRANK further agrees to execute any documents necessary to set aside and confirm to CYNTHIA her separate property and to release any and all claims that FRANK might have in and to CYNTHIA's separate property.

**6.3    *Cynthia's Obligation Under 1999 Agreement Extinguished***
Cynthia and Frank acknowledge that pursuant to the terms of the Post-Nuptial Agreement dated February 1999, which is superceded by this Agreement, there exists an obligation for Cynthia to re-pay to Frank a sum of $30,000.00. Frank waives any claim or entitlement to be repaid by Cynthia for the sum of $30,000.00 as previously set forth in the prior Agreement.

**6.4    *Liabilities to FRANK***

In the event the marriage of the parties is terminated, FRANK agrees to be responsible for and pay all liabilities and obligations associated with his separate property, including all property described in this agreement as being the separate property of FRANK. FRANK further agrees to indemnify and hold CYNTHIA and her property harmless from all liabilities associated with FRANK's separate property. In addition, FRANK shall be obligated and shall pay attorney fees to Donn C. Fullenweider the sum of $15,000.00 for services rendered to CYNTHIA. Said payment shall be made directly to Donn C. Fullenweider within thirty (30) days after the Judge of the 329th District Court signs the Order on Declaratory Judgment which will be presented by joint motion of the parties.

### 6.5 *Liabilities to CYNTHIA*

In the event the marriage of the parties is terminated, CYNTHIA agrees to be responsible for and pay all liabilities and obligations associated with her separate property, including all property described in this agreement as being the separate property of CYNTHIA. CYNTHIA further agrees to indemnify and hold FRANK and his property harmless from all liabilities associated with CYNTHIA's separate property.

### 6.6 *Waiver of Temporary Spousal Support, Spousal Maintenance, and Alimony*

Subject to the provisions set forth on Paragraphs 6.1 and 6.2, each party waives any right that may exist under law to seek or obtain spousal maintenance or alimony from the other party. If a court of competent jurisdiction orders either party to pay to the other party, or to a third party on behalf of the other party, temporary spousal support or alimony of any kind during the pendency of a dissolution proceeding, that temporary spousal support or alimony paid by one party to the other in connection with such a dissolution proceeding must be reimbursed to the party paying the spousal support or alimony within five days after receipt by the receiving party. Thus, for example, if $1,000 in temporary alimony is paid by FRANK to CYNTHIA during the pendency of a dissolution proceeding, the sum of $1,000 must be reimbursed to FRANK by CYNTHIA within five days after CYNTHIA receives the $1,000 from FRANK.

### 6.7 *Release and Waiver*

Frank and Cynthia acknowledge that they did not co-habitate prior to their marriage and further acknowledge that prior to their marriage there was no agreement, express or implied, made by Frank and Cynthia and no tacit understanding regarding their property has ever existed between them, other than that all of the property, income and debts, of each party remains the property of each party. Both Frank and Cynthia have been advised by their attorneys of the California Supreme Court decisions in *Marvin v. Marvin* and their progeny, which hold that implied or express agreements or tacit understandings between persons to hold property and pool property during their relationship, may be enforced by either person, upon the

FWS                CWS

termination of their relationship. Both Frank and Cynthia do hereby waive any and all rights and claims, which either may have acquired or may assert against the other if it is later alleged that there was any period of co-habitation prior to their formal marriage.

In the event either party proceeds with the pending divorce or later files a marriage dissolution proceeding (in the event of non suit or dismissal of the pending actions), neither party may request the Court to divide the property of either or both parties in a manner contrary to the terms of this agreement.

Each party relinquishes, disclaims, and waives all rights, title, and interest that he or she may have to seek a division of property and liabilities in a dissolution proceeding contrary to what is provided for in this agreement.

## ARTICLE 7
### Income Tax Returns

**7.1    *Tax Basis of Property.***
The parties agree that the tax basis of each item of property allocated to FRANK and CYNTHIA under the provisions of this Post Marital Agreement has not changed and will not change by reason of the division. If either party alters the tax basis or takes any other action that causes the other party to suffer any adverse federal and/or state tax ramifications, the party who sought a new basis shall indemnify the other party in the amount of the tax liability including attorneys' fees, accountants' fees and costs incurred in connection therewith. Each party shall not seek a new tax basis for any item of property by reason of the division, and if one party does hereafter attempt to seek a new tax basis, and if the other party is later assessed additional federal or state income taxes on the ground that any division of property under this Post Marital Agreement was a taxable event, the party seeking the new basis shall indemnify the other party in the amount of the tax liability arising from any such assessment including attorneys' fees, accountants' fees and costs incurred in connection therewith.

**7.2    *Filing of Returns and Refunds***
The parties acknowledge that they have filed separate income tax returns during their marriage. Each party agrees to assume, pay, bear and indemnify and hold the other free and harmless from his and her respective income tax returns, including, but not limited to, assessments, additional taxes, penalties, tax preparation and other professional fees and/or interest due and/or later determined to be due in connection with said returns. In the event of any tax refund for each of the parties' separate tax returns, the party to whom the refund is due is awarded such refund as his or her sole and separate property and the other party shall have no right, title

FMS                          Page 11 of 24                          CWS

and/or interest in the same. The parties shall in the future file separate income tax returns.

### 7.3 Tax Liability for Respective Businesses

With respect to all corporate entities awarded to each party, and specifically CYNTHIA's law practice which is confirmed as CYNTHIA'S separate property, the party awarded such entity is **ORDERED** to assume, pay, bear, indemnify and hold the other party free and harmless of and from any and all monies due and owing, including, but not limited to assessments, additional taxes, penalties and interest due now and/or later determined to be due in connection with any future and past income tax returns.

### 7.4 Cooperation and Furnishing of Information

The parties agree that each of them shall mutually cooperate and provide access to all necessary information or records that may be needed in connection with tax filings and audits.

**ARTICLE 8**
Dissolution of Marriage by Death

### 8.1 FRANK's Acceptance of CYNTHIA's Will and Waivers to Be Signed on Death of CYNTHIA

FRANK agrees to accept the provisions of any last will and testament and codicils that may be in effect at the time of CYNTHIA's death in full discharge, settlement, and satisfaction of any and all right, title, and interest that he, as CYNTHIA's husband, might otherwise acquire in her estate and property.

Unless designated as a named beneficiary under a written instrument, FRANK waives and releases to CYNTHIA, her executors, administrators, or assigns, any and all rights of election given to him as the husband of CYNTHIA, or through him to his heirs, to take against her last will and testament under any statutes, now or hereafter in force, in California or any other state or foreign nation in which CYNTHIA may have property at the time of her death.

If the marriage of the parties is dissolved by the death of CYNTHIA, FRANK agrees and hereby binds his personal representatives and heirs to agree to release and convey to CYNTHIA's estate any interest he may then have or claim to have in the separate property of CYNTHIA, including any property described in this agreement as being the separate property of CYNTHIA or as belonging to CYNTHIA's separate estate, other than any benefit conferred on FRANK in this Post Marital Agreement. FRANK agrees to execute on request all instruments of release or conveyance that

FWS                                                                          CWS

are necessary to give effect to this agreement. CYNTHIA hereby binds her personal representatives and heirs to release and convey to FRANK all of the interest, if any, that CYNTHIA or her estate may have in the then separate property of FRANK and in all the property described in this agreement as being the separate property of FRANK or as belonging to FRANK's separate estate unless otherwise provided for in this agreement.

**8.2**    *CYNTHIA's Acceptance of FRANK's Will and Waivers to Be Signed on Death of FRANK*

CYNTHIA agrees to accept the provisions of any last will and testament and codicils that may be in effect at the time of FRANK's death in full discharge, settlement, and satisfaction of any and all right, title, and interest that she, as FRANK's wife, might otherwise acquire in his estate and property.

Unless designated as a named beneficiary under a written instrument, CYNTHIA waives and releases to FRANK, his executors, administrators, or assigns, any and all rights of election given to her as the wife of FRANK, or through her to her heirs, to take against his last will and testament under any statutes, now or hereafter in force, in California or any other state or foreign nation in which FRANK may have property at the time of his death.

If the marriage of the parties is dissolved by the death of FRANK, CYNTHIA agrees and hereby binds her personal representatives and heirs to agree to release and convey to FRANK's estate any interest she may then have or claim to have in the separate property of FRANK, including any property described in this agreement as being the separate property of FRANK or as belonging to FRANK's separate estate, other than any benefit conferred on CYNTHIA in this agreement. CYNTHIA agrees to execute on request all instruments of release or conveyance that are necessary to give effect to this agreement. FRANK hereby binds his personal representatives and heirs to release and convey to CYNTHIA all of the interest, if any, that FRANK or his estate may have in the then separate property of CYNTHIA and in all the property described in this agreement as being the separate property of CYNTHIA or as belonging to CYNTHIA's separate estate unless otherwise provided for in this agreement.

**8.3**    *Family Allowance to Surviving Spouse*

The parties agree that the surviving spouse will not have the right to petition the court for the payment of a family allowance for the support of the surviving spouse following the death of a party. In that regard, the surviving spouse hereby waives and releases to the deceased party and his or her executors, administrators, or assigns any and all rights to a family allowance now or hereafter in force in California or any other state or foreign jurisdiction.

### 8.4 Life Estate in Homestead

Subject to the following provision, each party irrevocably waives any right he or she might otherwise then have under the provisions of any "homestead" rights, now or hereafter in force under the constitution or the laws of Texas, the probate homestead in the State of California, or any other state or foreign nation, as well as all rights he or she might have under the provisions of the Texas Probate Code, as amended, relating to the right to have a life estate in the homestead of the parties.

**ARTICLE 9**
Other Provisions

### 9.1 Entire Agreement

Each party has carefully read this agreement, including all schedules attached to it and other documents to which it refers, and has executed it in reliance on the party's own judgment. This agreement replaces any earlier agreements or understandings, whether written or oral, and there are no contemporaneous written or oral agreements that are not fully expressed in it.

### 9.2 Incorporation of Schedules

All schedules and other instruments referred to in this agreement are incorporated into this agreement as completely as if they were copied verbatim in the body of it.

### 9.3 Partial Invalidity

If any provision of this agreement is for any reason found to be unenforceable, all other provisions nonetheless remain enforceable.

### 9.4 Enforceability

This agreement may be enforced by suit in law or equity by either of the parties or by their heirs, executors, attorneys, or assigns. Each party agrees that, by signing this agreement and accepting any benefit whatsoever under it, he or she is estopped and barred from making any claim of any kind at any time to any separate property or the separate estate of the other party or to any property described in this agreement as being the separate property of the other party. Each party waives his or her right to make claims to any separate property of the other party or to any property designated as belonging to the separate estate of the other party, whether the property is acquired before or after this agreement is signed.

### 9.5 Successors

This agreement binds and inures to the benefit of the parties and their respective legatees, devisees, heirs, executors, legal and personal representatives, assigns, transferees, and successors in interest.

### 9.6 Amendment or Modification

_FWS_

Page 14 of 24

_CWS_

This agreement may be waived, abandoned, modified, amended, discharged, or terminated only by a written instrument signed by both parties, and their respective attorneys, that specifically identifies the waiver, abandonment, modification, amendment, discharge, or termination.

### 9.7 Effective Date

This agreement takes effect when it is executed by both parties and will remain in effect even when the parties' marriage is dissolved by death or otherwise.

### 9.8 Execution of Documents

Each party agrees to cooperate fully with the other in performing all acts and in executing, acknowledging, and delivering all instruments and documents required to accomplish the intent of this agreement, including but not limited to deeds, assignments, and promissory notes. Each party agrees to execute all documents required to accomplish the intent of this agreement within fourteen days after the documents are presented to the party for execution.

### 9.9 Attorney's Fees and Expenses for Enforcement

If either party defaults in performing any obligation under this agreement so that the other party is required to engage the services of an attorney for enforcement or relief, or if either party brings an action or other proceeding to enforce this agreement or to enforce any judgment, decree, or order made by a court in connection with this agreement, the defaulting party must pay all reasonable attorney's fees, expert's fees, and other costs of the other party.

### 9.10 Waiver of Breach

The waiver of any breach of any provision of this agreement does not waive any other breach of that or any other provision. Waiver of any term of this agreement may be accomplished only concerning future performance and only by a written instrument signed by both parties expressly stating the provisions waived.

### 9.11 Titles and Captions

Article headings, titles, and captions contained in this agreement are merely for reference and do not define, limit, extend, or describe the scope of this agreement or any provision.

### 9.12 Representation

The attorney representing FRANK is WARREN COLE of Houston, Texas. CYNTHIA has not received any legal, financial, or other kind of advice from FRANK or from his attorney, WARREN COLE, in connection with the advisability or nonadvisability of entering into this agreement.

FWS                      Page 15 of 24                      CWS

The attorney representing CYNTHIA is DONN C. FULLENWEIDER of Houston, Texas. FRANK has not received any legal, financial, or other kind of advice from CYNTHIA or from her attorney, DONN C. FULLENWEIDER, in connection with the advisability or nonadvisability of entering into this agreement.

### 9.13 Place of Performance and Governing Law
All rights, duties, and obligations under this agreement are payable and enforceable in Texas, California, and any other jurisdiction in the United States in which enforcement of this agreement is sought. This agreement must be construed, and its performance enforced, under Texas law.

### 9.14 Multiple Originals
This agreement is executed in multiple originals. This agreement is signed after execution of the Waiver of Disclosure of Financial Information.

### ARTICLE 10
Representations and Warranties

### WARNING

**EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE IS PERMANENTLY SURRENDERING RIGHTS AND CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW AND UNDER THE LAW OF OTHER JURISDICTIONS.**

### 10.1 Representations and Warranties of CYNTHIA

My name is CYNTHIA WHITE SINATRA. I represent and warrant that:

1. I have carefully read each and every page of this agreement and all schedules attached or referred to, in their entirety.

3. I AM ENTERING INTO THIS AGREEMENT AFTER RECEIVING THE ADVICE OF INDEPENDENT COUNSEL AND BASED ON MY KNOWLEDGE AS AN ATTORNEY.

4. I have given careful and mature thought to the making of this agreement.

5. I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

FWS         Page 16 of 24         CWS

6.   I have investigated the property and financial obligations of FRANCIS WAYNE SINATRA sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of FRANCIS WAYNE SINATRA beyond the disclosures provided.

7.   I am not relying on any fiduciary obligations owed by one party to the other or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by FRANCIS WAYNE SINATRA or anyone acting on his behalf.

8.   I fully understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of FRANCIS WAYNE SINATRA, except as expressly provided for in this agreement.

9.   I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering rights to income and property I would otherwise have under Texas law.

10.  I am executing this agreement with intent to be bound fully by all its terms.

_____
CYNTHIA WHITE SINATRA

## 10.2   Representations and Warranties of FRANK

My name is FRANCIS WAYNE SINATRA. I represent and warrant that:

1.   I have carefully read each and every page of this agreement and all schedules attached or referred to, in their entirety.

2.   I am fully and completely informed by my attorney about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both parties.

3.   I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY AFTER RECEIVING THE ADVICE OF INDEPENDENT COUNSEL.

4.   I have given careful and mature thought to the making of this agreement.

FWS                          Page 17 of 24                          CWS

5.      I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

6.      I have investigated the property and financial obligations of CYNTHIA WHITE SINATRA sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of CYNTHIA WHITE SINATRA beyond the disclosures provided.

7.      I am not relying on any fiduciary obligations owed by one party to the other or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by CYNTHIA WHITE SINATRA or anyone acting on her behalf.

8.      I fully understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of CYNTHIA WHITE SINATRA, except as expressly provided for in this agreement.

9.      I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering rights to income and property I would otherwise have under Texas law.

10.     I am executing this agreement with intent to be bound fully by all its terms.


FRANCIS WAYNE SINATRA

EXECUTED in multiple originals on the dates and at the times of the acknowledgments shown below.

STATE OF _____    )(
COUNTY OF _____    )(

This instrument was acknowledged before me at _____ __. M. on _____ by FRANCIS WAYNE SINATRA.


FWS                          Page 18 of 24                          CWS

Notary Public, State of _____

STATE OF _____ )(
COUNTY OF _____ )(

This instrument was acknowledged before me at _____ __. M. on
_____ by CYNTHIA WHITE SINATRA.


_____
Notary Public, State of California

_____
FWS

CWS

## SCHEDULE A

## PROPERTY CONFIRMED AS FRANK'S SEPARATE PROPERTY

A.  **Real Estate:**
The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents, to wit:

D.  The unimproved real property located in Idylwild, California, subject to all existing encumbrances and legally described as follows:

Lot 14, Tract 3606 in the City of Idylwild, County of Riverside, State
of California as per Maps recorded in Book 62, Pages 90-92 of Maps
in the Office of the County Recorder of said County;

E.  The residential real property and townhouse located at 820 South Gretna Green, Unit 7, Los Angeles, California and improvements, subject to all existing encumbrances legally described as follows:

Lot 1 of condominiums, Unit 7 of Tract 36906 of Maps in Book 963, Page 25 of
Maps recorded in the Office of the County Recorded of said County

F.  The real property and residence located at 9759 Suffolk Drive, Los Angeles, California, subject to all existing encumbrances, legally described as follows:

Lot 48 of Tract 24946 in the City of Los Angeles, County of Los
Angeles, State of California, as per Maps recorded in Book 842,
Pages 82-94 as per Maps recorded in the Office of the County
Recorder of said County

2.  **Cash, Checking, Savings and Brokerage Accounts**
All cash and bank accounts standing in FRANK's name and/or held on FRANK's behalf by any entity and/or individual.

3.  **Stocks and Bonds**
All stocks and bonds of any kind and nature standing in FRANK'S name and/or held on FRANK's behalf by any other person or entity.

4.  **Partnerships, Trusts, and Other Business Interests**
The following partnerships/S Corporations and Trusts in which FRANK has an interest:
Sheffield Enterprises, Inc.

Essex Productions, Limited Partnership
Bristol Productions, Limited Partnership
Somerset Real Estate Trust
Franksinatra.com
AK Cellars Winery
Somerset Distributors, Inc.
Somerset Trust

**5.  Retirement, Pension and FRANK'S Employee Benefit Plans**

All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the FRANK'S past, present, or future employment, including, but not limited to, the following retirement accounts:

A.  Screen Actors Guild (SAG) Pension Plan;

B.  American Federation of Radio and Television Artist (AFTRA) Pension Plan

**6.  Life Insurance Policies**

All right, title and interest, both legal and beneficial, in and to any life insurance policy in which FRANK is the owner, including, but not limited to, the following life insurance policies:

A.  First Colony Life Insurance policy number 2153436;

B.  First Colony Life Insurance policy number 2350893;

C.  Union Central Life Insurance policy number 03041827;

D.  American Federation of Musicians, Local 47 policy

**7.  Automobiles**

A.  One 1991 Buick Reatta automobile, bearing California license number 2WBY559, subject to all existing encumbrances.

B.  One 1999 Buick Regal automobile, bearing California license number 4EGY479, subject to all existing encumbrances.

C.  One 2001 Chevrolet Impala automobile, bearing California license number _____, subject to all existing encumbrances.

D.  One 2000 Chrysler Town and Country automobile, bearing California license number J73JXY, subject to all existing encumbrances.

**8.  Personal Property**

FWS                          Page 21 of 24                          CWS

A.   All furniture and furnishings, artwork and personal property in FRANK's possession and/or under his control.
B.   All professional equipment and camera equipment in FRANK's possession and/or under his control.
C.   All of FRANK's clothing, jewelry and personal effects.

## 7.   Miscellaneous

A.   All notes and loans receivable due and owing to FRANK from any source.
B.   All notes and loans receivable due and owing to FRANK from any source.

## SCHEDULE B

## PROPERTY CONFIRMED AS CYNTHIA'S SEPARATE PROPERTY

1. **Real Estate:**
The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents, to wit: *property located at 3420 Old Caney Road Wharton, Texas 77488*

a. **Cash, Checking, Savings and Brokerage Accounts**
The following right, title and interest in and to the below listed Cash, Checking, Savings and Brokerage Accounts

   a. *All cash and bank accounts standing in Cynthia's name or held on Cynthia's behalf by any entity and/or individual.*

b. ~~Annuities~~
~~All right, title and interest, both legal and beneficial, in and to the~~

c. ~~Retirement, Pension and CYNTHIA' Employee Benefit Plans~~
All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the CYNTHIA' past, present, or future employment, and the following retirement accounts:

   a.

d. **Individual Retirement Account(s)** *any retirement accounts in*
All right, title and interest in ~~and to the~~ *the name of Cynthia.*

e. **Life Insurance Policies** *any life insurance*
All right, title and interest, both legal and beneficial, in ~~and to the~~ *policies in the name of Cynthia.*

f. **Personal Property**
   a. The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment:
   b. All clothing, jewelry, and other personal effects in the possession of CYNTHIA or subject to her sole control

PWS                    Page 23 of 24                    CWS

c.      Any item in any room that was given as gifts to CYNTHIA.


g.      **Automobile**
        The *2001 Jaguar XK8 (pending delivery)*


*JWS*                                                           CWS

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _Nov. 16, 2000_, before me, _Gail E. Jorgensen_,
Date / Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Cynthia White Sinatra_,
Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

GAIL E. JORGENSEN
Commission # 1181717
Notary Public - California
Los Angeles County
My Comm. Expires Apr 30, 2002

Place Notary Seal Above

──────────────── OPTIONAL ────────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Post Marital Agreement_

Document Date: _11/16/00_   Number of Pages: _26 (2 ACKS.)_

Signer(s) Other Than Named Above: _Francis Wayne Sinatra_

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Attorney in Fact

☐ Trustee

☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

© 1997 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402   Prod. No. 5907   Reorder: Call Toll-Free 1-800-876-6827

| | | | | SCH. C | CAP G/L | | FEDERAL | STATE | REMAINING | TO |
|---|---|---|---|---|---|---|---|---|---|---|
| YEAR | WAGES, | INTERE | DIVIDEND | INCOME | LOSSES | PTRSHPS | TAXES PAID | TAXES PAID | COM $$ [1] | C. SINATRA |
| 2003 | 1,906 | 10,448 | 285 | (128,247) | (3,000) | 748,387 | (147,563) | (47,932) | 437,284 | 194,002 |
| 2004 | 154 | 8,333 | 474 | (152,304) | (3,000) | 705,323 | (126,152) | (41,304) | 394,524 | 88,574 |
| 2005 | 27,489 | 23,905 | 38,322 | (359,617) | 1,364,359 | 1,224,181 | (505,134) | (219,377) | 229,769 | 818,839 |
| 2006 | 4,995 | 46,534 | 4,885 | (159,723) | (3,000) | 1,101,857 | (259,377) | (84,413) | 654,758 | 503,347 |
| 2007 | 7,307 | 22,436 | 24,725 | (44,566) | 12,367,795 | 30,338 | (1,848,998) | (1,149,552) | (2,958,310) | 903,706 |
| 2008 | 6,455 | 55,426 | 22,664 | (249,138) | 1,202 | 1,182,353 | (259,864) | (77,889) | 680,007 | 1,009,921 |
| 2009 | 9,017 | 18,649 | 1,602 | (102,050) | (200) | 486,472 | (93,407) | (23,345) | 296,938 | 434,362 |
| 2010 | 18,949 | 438 | 324 | 121,509 | 1,303 | 543,044 | (198,447) | (51,724) | 434,093 | 315,759 |
| 2011 | 17,098 | 903 | 134 | 114,447 | (289) | 445,864 | (167,956) | (47,446) | 363,044 | 283,647 |
| 2012 | 4,364 | 14,092 | 4,809 | 124,671 | 5,550 | 479,813 | (180,503) | (62,981) | 384,265 | 113,320 |
| 2013 | 4,288 | 14,699 | 14,358 | 132,248 | 4,671 | 188,084 | (105,422) | (21,134) | 227,121 | 47,182 |
| Totals | 102,022 | 215,863 | 112,582 | (702,770) | 13,735,391 | 7,135,716 | (3,892,823) | (1,827,097) | 1,143,493 | 4,712,659 |

SUMMARY OF $$ TO/FOR BENEFIT OF CS

1 This amount reflects only what may have been deemed as community income. All CG/Losses are not included since that would be separate property.

EXHIBIT R-52 (1 of 1)

Respondent's Exhibit No. 72
FWS Trial Inventory & Appraisement

| | | Cause No. 46, 184<br>329TH District Court<br>Wharton County, Texas | | TRIAL INVENTORY OF FRANCIS W. SINATRA, JR. | | | | |
|---|---|---|---|---|---|---|---|---|

| | ASSET/LIABILITY | BAL.<br>AS OF | PARTY<br>IN POSS | COM.<br>VALUE | HUS.<br>SEP. | WIFE<br>SEP. | NOTES | Exhibit No. |
|---|---|---|---|---|---|---|---|---|
| | **REAL ESTATE** | | | | | | | |
| 1 | 9706 Hensel Rd., Beverly Hills, CA<br>Lot 9 of Tract No. 21845, per map recorded in Book 619,<br>pages 83 and 84 Inclusive of Maps | | | | 4,600,000.00 | | See Grant Deed (FWS02518 to FWS002519)<br>"John Eckel and Gwenn Eckel GRANT to Francis Wayne Sinatra, *Trustee of the Francis W. Sinatra Trust dated June 15, 1998*" | R41 - Grant Deed |
| 2 | Less Mortgage CNB Finance | | | | (1,806,000.00) | | Adjustable Rate Mortgage executed August 8, 2012 - City National Bank for $1,800,000 -FWS Trust paid the $1,800,000 on 12-20-2007 (FWS 002520 to FWS 002525 )<br><br>See also Deed of Trust (August 8, 2012) (FWS002527 to FWS002543)<br>"Borrower" Francis Wayne Sinatra - "Trustor" Francis Wayne Sinatra, Trustee of the Francis W. Sinatra Trust"<br><br>See also Scheudle A - 2007 Tax return (FWS000853)<br>Line 10 - "Home mortgage interest paid and reported on for 1098 - ($53,753)<br><br>NOTE - FWS Trust paid City National Bank $1,806,000 on 12-20-2007. | R42 - Adjustable Rate Mortgage |
| 3 | 1913 Kelving Way, Wharton TX (50% undivided interest)<br>Lot Five (5) LESS, SAVE and EXCEPT the Northwest 12'... | | | | 235,000.00 | | January 20, 2005 Deed of Trust executed - "CS and FSW" "Single Person" | R21 and R 22<br>(already admitted0 |
| | Less 1/2 Mortgage<br>Amegy Mortgage Company -<br>Loan No. 1XXXXXXX3225 | | | | (140,000.00) | | We do not have a mortgage statement. | |
| | **CASH/BANK ACCOUNTS** | | | | | | | |
| | | | | | | | | |
| | **AUTOS/BOATS/OTHER VEHICLES** | | | | | | | |
| 4 | 2014 GMC Acadia<br>Purchased 02-28-2014 / Trade in for 2014 Lexus ($61,500)<br>George Kalinsky, $10,000 advance from sale of his Dad's memorabillia | | | | 40,564.02 | | Purchased February 28, 2014 (traded in 2014 Lexus)<br>$61,500, less the trade in ($61,500), less outstanding balance with CNB ($20,935.98) as of 05-20-14 . | R75 |
| | **INVESTMENTS/BROKERAGE ACCTS.** | | | | | | | |
| | | | | | | | | |
| | **BUSINESS INTERESTS/TRUSTS** | | | | | | | |
| 5 | Anomoly Limited, LLC (100% interest) | | | - | | | | |
| 6 | FWS Reality Delaware, LLC (331/3% interest) | | | | 1,200,000.00 | | See FWS002915 to FWS002933 and FWS002934 | R44 |
| | Less deferred tax liability | | | | (3,000,000.00) | | | |
| 7 | Frank W. Sinatra Trust (Est June 15, 1998)<br>Confirmed as Frank Sinatra, Jr. Separate Property | | | | | | FWS Trust produced - See FWS002936 to FWS002962<br>FWS Amendment and Restatement - 09-20-2005 - FWS002936 to FWS002962<br>Confirmed as FSW's SP - Page 3 (G) of 24 of Post Marital Agreement | R45<br>R23 - already admitted - Consent Decree |
| 8 | Dorchester Real Estate, LLC(33 1/3% interest) | | | | 285,000.00 | | Dorchester Real Estate , LLC formed by Nancy Sinatra on 03-24-2011<br>NSL, FWS, and TS all receive 33 1/3% on 12-11-2011)<br>FWS002272 to FWS002307 | R46 and<br>R47 |
| 9 | FSE HOLDCO, LLC (20.09% interest) | | | | 1,700,000.00 | | FWS002236 to FWS00238<br><br>11-19-2007 FWS acquired interest in Holdco<br>FWS exchanged his interest in Bristol Production L.P> (21.75%), Essex Production L.P. (33%) and Sheffield Enterprises, Inc. (27%) | R48<br>R49<br>R50 |

## EXHIBIT R-72 (1 of 2)

| ASSET/LIABILITY | BAL. AS OF | PARTY IN POSS | COM. VALUE | HUS. SEP. | WIFE SEP. | NOTES | |
|---|---|---|---|---|---|---|---|
| **Cause No. 46, 184** 329TH District Court Wharton County, Texas | TRIAL INVENTORY OF FRANCIS W. SINATRA, JR. | | | | | | |
| ***PENSION/RETIREMENT/IRAS*** | | | | | | | |
| 10 Screen Actor's Guild (SAG) | | | | | | Confirmed as FSW's SP - Page 3 (F) of 24 and Page 21 of Post Marital Agreement | R23 |
| 11 American Federation of Television & Radio Artists (AFTRA) | | | | | | 21 (5) of Post Marital Agreement | R23 |
| 12 American Federation of Musicians (AFM) | | | | | | Confirmed as FSW's SP - Page 3 (F) of 24 | R23 |
| ***LIFE INSURANCE*** | | | | | | | |
| 13 First Colony Life Insurance policy number 2153436 | | | | | | Confirmed as FSW's SP - Page 21 of 24 of Post Marital Agreement | R23 |
| 14 First Colony Life Insurance policy number 2350893 | | | | | | Confirmed as FSW's SP - Page 21 of 24 of Post Marital Agreement | R23 |
| 15 Union Central Life Insurance policy number 03041827 | | | | | | Confirmed as FSW's SP - Page 21 of 24 of Post Marital Agreement | R23 |
| 16 American Federation of Musicians, Local 47 Policy | | | | | | Confirmed as FSW's SP - Page 21 of 24 of Post Marital Agreement | R23 |
| ***PERSONAL PROPERTY*** | | | | | | | |
| 17 Furniture & Furnishings - 9706 Hensel Rd. | | | | 150,000.00 | | | |
| 18 Furniture & Furnishings - 1913 Kelving Way, Wharton TX | | | | undetermined | | | |
| ***MISCELLANEOUS*** | | | | | | | |
| 19 Promissory Note Cynthia Sinatra to Frank Sinatra (01-10-2005) | | | | 40,000.00 | | FWS000056 - signed 01-10-2005 $40,000 plus interest at 5% due and payable pon the sake of 3420 Old Canney Road, Wharton, Texas 77478. | R33 already admitted |
| **TOTAL GROSS ESTATE** | | | 0.00 | 3,304,564.02 | 0.00 | | |
| ***LIABILITIES (enter as negatives)*** | | | | | | | |
| 20 Persoanl Loan from George Kalinsky | | | 0.00 | (10,000.00) | | | |
| 21 Promissory Note - The Francis W. Sinatra Trust owes to Nancy Sinatra Lambert Trust - March 14, 2014 | | | | (250,000.00) | | March 14, 2014 Promissory Note | R51 |
| **TOTAL LIABILITIES** | | | 0.00 | | | | |
| **NET ESTATE** | | | 0.00 | 3,044,564.02 | 0.00 | | |

# EXHIBIT R-72 (2 of 2)

Petitioner's Exhibit No. 27
Memo from F. Sinatra to Matt

To: Matt
Re: Cynthia expenses

Dear Matt,

As of September 1st. 2009, the following items will still be paid by me.

a) Mortgage on property: 1913 Kelving Way Court, Wharton Texas 77488. (This payment will be applied each month directly from my bank account at Prosperity Bank, Wharton Texas).

b) All charges concerning or related to utilities; (gas, water and electricity).

c) Any and all repairs pertaining to the actual structure of the building; (including: roof, floors, walls, built in appliances such as refrigerators, freezers, air conditioners, heaters, as well as plumbing and electrical work).

d) Comprehensive health insurance for Cynthia Sinatra, Brittany Brink, and Victoria Brink. This does not include deductibles incurred at time of claim(s).

e) Requirements for tuitions, books, and other similar expenses necessary for the continuing college education of both girls.

f) The sum of $1,000.00 per month to each girl for assistance in their living expenses while in school. It is my considered opinion that when out of school both girls are of age and capability to secure gainful employment.

g) The sum of $2,800.00 per month to Cynthia as provided in the Citi Bank credit card that has an account number different than my own, and is written in her name.

h) As of this writing, I am not aware of any other liabilities that I have found necessary to pay on behalf of Cynthia or the girls, however I will make additions or subtractions to the above list, as required if and when they occur.

Also as of this date, there will be no further contributions of supplemental monies by my credit card, as there have been in the past, to assist in the payment of Cynthia's other expenses. I have discussed this situation with her and she assures me that she will be making at least enough income to cover these expenses, which are in reality, a lesser figure each month than the contributions I make. The only exceptions to the above mentioned "contributions of supplemental monies" would be provided in cases of emergencies. The determination of these exceptions will be made by me alone, if and when an emergency situation arises. At such a time, I will instruct the office to issue the necessary funds.

This policy begins as previously stated, September 1st. 2009

*[signature]*

(August 26, 2009/14:43hrs.PDT message ends)

PETITIONER'S EXHIBIT

27

Petitioner's Exhibit No. 28
Memo from F. Sinatra to Matt

Matt,

Please consider the following information enclosed as page 2 to be added to my memo to you of August 26th.

a) Membership and expenses at the Wharton Country Club are in fact my expenses which are used by Cynthia who is a vice president of the organization. I will continue to pay the charges incurred there as long as they do not get out of hand, at which time I will either settle this with Cynthia, or cancel the membership all together. The decision will be mine.

b) Cynthia and both girls will continue to receive the use of Mobile Exxon as long as they do not exceed $200.00 per month, as Randy and I have previously agreed.

c) As I believe I had mentioned earlier, any medical expenses of an emergency nature will be met by me for the health of Cynthia and the girls. Any other medical charges of a non-emergency nature will have to be absorbed by them.

d) Any and all travel expenditures will have to be mutually agreed upon by Cynthia and myself. As to the girls, I am hoping that within reason, they will now call upon their father for assistance for such requirements.

e) Prescriptions and other like items will also be mutually agreed upon by Cynthia, the girls, and myself.

f) Replacement of necessary appliances in Cynthia's home will be paid for by me, in view of the decision recently made by Cynthia that she intends to sell her current large home, and seek residence in a smaller one. (keeping the house up to date and repair will increase its value).

g) As far as publishers and leagues of women voters, I have no knowledge of current activities that Cynthia may have with such interests. In the future, we will address them as they arrive.

From time to time, other items for consideration will come up. Those things which are not now addressed in this collective memo will have to be dealt with if and when they appear. There are financial issues that may come to pass in the coming months and years. We will consider them one by one. Be advised that this list is subject to change at any time if I should deem such change to be necessary. I am taking every possible step to stop this on going financial hemorrhaging.

(August 30, 2009/18:51hrs PDT message ends)


PETITIONER'S EXHIBIT

28

Petitioner's Exhibit No. 29
Letter from Weapons to F. Sinatra

# CYNTHIA SINATRA
### Attorney and Counselor at Law
2120 Welch Street
Houston, Texas 77019
(713) 225-8500
(713) 523-7887 FAX
cynthiasinatra@aol.com
Sinatralaw.com



**PETITIONER'S EXHIBIT**

29

August 31, 2009

Dear Francis,

I know that Jackson Hole is one of the most beautiful places on this earth. I have been there many times and had hoped that you would include me in special trips, such as this. I am glad that you enjoyed the trip and had the opportunity to inhale the Grand Tetons with your friends.

Yes, I am disappointed in our relationship. I am excluded from the important moments in your life. I was hoping that by now you would have realized that I am an asset to you and your organization and not a liability.

Please note that for months, I have had no credit on my credit card. I checked today. I have not used it. I have not other income, and you have promised that I would have $2800 credit each month for prescriptions and food. Please assure that by tomorrow, September 1, 2009, that I have the $2800 allotment. I am going to pay my electricity, water, prescriptions and food with that amount.

Thank you for promptly calling Matt and seeing that this is taken care of.

Always,

*C*

Weapons

Petitioner's Exhibit No. 30
Letter from Weapons to F. Sinatra

PETITIONER'S
EXHIBIT

30

CONFIDENTIAL

CYNTHIA SINATRA

Attorney and Counselor at Law
2120 Welch Street
Houston, Texas 77019
(713) 225-8500
(713) 523-7887 FAX
cynthiasinatra@aol.com
Sinatralaw.com
September 13, 2009

FF and Company
By Fax: 310-258-1507

Dear Francis,

I have just read through your memo to Matt, and I want you to know that I appreciate your fight to continue to protect us from harm. I am cutting back as much as I can, and I am feeling positive about a job coming up in the near future.

In subsection b) you state that we have use of the Exxon card up to $200. Is that $200 per person? I know that all of three of our vehicles will not be able to be fueled at such rationing. Is this a clerical mistake?

I am on my way to HEB to pick up $979.00 worth of prescriptions. I need to have them with me this week, just in case this job begins immediately.

I just got my car out of Momentum day before yesterday. It is running much better, now; however, they did put new brake pads on the front wheels. I do not know how much the charges are. Kevin let me pick up the car anyway. I do not have the money to pay Momentum for the brake pads. Please let me know how I can help with this.

I need to travel to The Hague. I have used my airmiles, however, I cannot pay for the Bel Air Hotel with what is left and survive. Would you be able to help me once I am there?

I miss my Francis. <mark>I know that your life has moved on, and I will always care about you and love you.</mark> Perhaps after I get a job, we can communicate like in old days, as friends. My shame is too great to try to talk to you until I can answer your questions with something positive. I want to help. I need to help.

Always,

Weapons

Petitioner's Exhibit No. 31
Letter from F. Sinatra
to My Darling Weapons

PETITIONER'S EXHIBIT

31

MY DARLING WEAPONS,

WELL OVER A MONTH HAS PASSED NOW SINCE I LAST HEARD YOUR VOICE. IT HAS BEEN A LONG AND BITTERLY LONELY NUMBER OF DAYS THAT HAVE CAUSED MISERY AND LONLINESS. FOR A TIME, YOU AT LEAST SENT TEXT MESSAGES TO ME WHICH AT LEAST WERE SOME COMMUNICATION, BUT A BITTER SUBSTITUTE. I AM MOST UNHAPPY ABOUT YOUR ADDITUDE IN THIS MATTER BECAUSE I BELIEVE IT IS BENEETH YOU TO BEHAVE SO.

AS I HAVE TRIED TO TELL YOU, SINCE THE 4TH. WEEK OF MAY, I HAVE PROVIDED YOU WITH 5 TRIPS TO VARIOUS LOCATIONS. IF YOU ARE CURIOUS, I WILL TABULATE THE COSTS OF ALL OF THOSE VISITS ALONG WITH THEIR COLLATERAL EXPENSES. PERHAPS THE NUMBERS WOULD IMPRESS YOU AS TO HOW EXPENSIVE A PERIOD OF 3 MONTHS OF TRAVEL CAN BE IN THIS DAY AND AGE. I CHOSE NOT TO BRING YOU TO CALIFORNIA EARLIER THIS MONTH BECAUSE I HAD MY HANDS FULL WITH 7 HOUSE GUESTS ON A SLEEPING BASIS, AS WELL AS 12 TO 14 ON A DAILY BASIS. IT WOULD HAVE BEEN TOO MUCH TO BRING YOU HERE AT THAT TIME. I HAD ENOUGH DIFFICULTY JUST KEEPING RENEE FROM DRIVING EVERYBODY CRAZY.

SO NOW YOU RESPOND BY CUTTING OFF COMMUNICATION. I BELIEVE THAT THE PRIMARY REASON FOR YOUR ACTIONS IS MANIFEST. YOU DID NOT GET YOUR WAY. FOR YEARS NOW, I HAVE BEEN AWARE OF YOUR POSITION ON HAVING THINGS GO EXACTLY AS YOU WANT THEM TO, AND I KNOW THAT YOU MAINTAIN THE ADDITUDE; "NO ONE EVER SAYS NO TO ME"! THROUGHOUT THE YEARS WE HAVE BEEN TOGETHER, I HAVE TRIED NEVER TO SAY "NO" TO YOU; NOT BECAUSE YOU ALWAYS MUST HAVE THINGS YOUR OWN WAY, BUT RATHER BECAUSE I HAVE LOVED YOU SO MUCH THAT I ALWAYS WANTED YOU TO HAVE THINGS THE WAY THAT YOU WISHED THEM TO BE. I HAVE BROKEN MY BACK SO MANY TIMES TO KEEP THIS ORDER OF THINGS FOR YOU AND THE GIRLS IN EXACTLY THIS WAY.

BUT NOW THE TIME IS COME WHEN I CAN NO LONGER DO SUCH THINGS. PROFESSIONALLY AS WELL AS FINANCIALY, I AM FIGHTING FOR MY VERY LIFE.

WHEN WE WERE MARRIED, I PROVED MYSELF NOT TO BE THE HUSBAND YOU WANTED. NOT BY A LONG SHOT. AND EVEN TODAY, IT HURTS ME TO THINK OF HOW INADEQUATE I WAS. I MADE MY MIND UP AFTER OUR MARRIAGE FAILED THAT I WOULD AT LEAST BE STEADFAST AND COMPLETE IN ONE PROMISE I HAD MADE TO YOU. I ALWAYS TOLD YOU THAT HOWEVER GREAT OR HUMBLE, I WOULD ALWAYS "SHARE MY FORTUNE WITH YOU".
THIS, I HAVE FAITHFULLY CARRIED OUT WITHOUT A FAILURE, OR A HESITATION. I PROMISED TO TAKE CARE OF YOU AND THE GIRLS. I HAVE KEPT MY PROMISE IN SHARING WITH YOU, ALL OF MY RESOURCES.

BUT ONE THING I NEVER PROMISED YOU WAS…"EVERYTHING". IF I PERMIT THINGS TO CONTINUE THE WAY THEY HAVE BEEN FOR THE PAST 17 YEARS, THAT IS EXACTLY WHAT YOU WILL HAVE ENDED UP TAKING FROM ME… EVERYTHING! THIS IS WHY I HAVE BEGGED YOU TO GO BACK TO WORK, SO THAT SOME OF THE HEAT WILL BE REMOVED FROM MY PICTURE BEFORE I GO BROKE.

THERE IS NO REASON FOR ME TO LIST AGAIN THE DETAILS OF MY MASSIVE CONTRIBUTIONS TO BOTH YOU AND THE GIRLS THROUGH ALL OF THE YEARS, BECAUSE YOU KNOW THEM SO WELL. I SENT A LIST TO MRS.HENSLEY OF ALL THE RESPONSIBILITIES THAT I WILL CONTINUE TO ASSUME IN THE FUTURE. OBVIOUSLY SHE SHOWED IT TO YOU, AND THEN YOU SEND A TEXT SCOLDING ME FOR SENDING IT TO HER AND NOT TO YOU. YOU ARE THE ONE WHO HAD BROKEN OFF COMMUNICATION.

IN ONE INSTANCE, YOU PROMISE THAT YOU WILL GO BACK TO WORK IN ORDER TO HELP TAKE THE BURDEN OFF ME. I RENT FOR YOU ONE OFFICE, AND THEN ANOTHER. NEITHER ONE YOU USE FOR THE PRACICE OF LAW. IN ANOTHER INSTANCE, YOU BECOME ANGRY AT ME AND TELL ME THAT IF I WASN'T SUPPORTING JOCIE, I WOULD STILL BE ABLE TO PAY ALL OF YOUR BILLS AND THE LIKE. MY SUPPORT OF YOU AND THE GIRLS IN THIS TIME PERIOD REMAINS NEARLY $10,000.000 PER MONTH. I DON'T UNDERSTAND WHY YOU WILL NOT ACCEPT THIS AS A BASIS FOR YOUR FINANCIAL LIFE, AND PICK UP THE REST OF THE COSTS BY WORKING.

THE FACT IS THAT YOU HAVE NOT KEPT YOUR PROMISE TO ME. I WAS HOPING THAT YOU WOULD SHOW ME THIS AS AN INDICATOR OF GOOD FAITH SO THAT WE CAN CONTINUE ON TOGETHER. I HAVE THOUGHT ABOUT IT FOR SO LONG NOW, AND I STILL DON'T THINK THAT I AM ASKING TOO MUCH FOR OUR RELATIONSHIP AS WE GO ON INTO THE FUTURE.

I KNOW THAT THIS LETTER WILL BE AN UNPLEASANT EXPERIENCE FOR YOU TO READ, BUT I WANT TO ALSO ADD THAT I WANT US TO HAVE A FUTURE TOGETHER THAT WE CAN BOTH LIVE WITH. ALL I'M ASKING FOR IS YOUR HELP, AS YOU HAVE PROMISED. HOWEVER, BECAUSE I DIDN'T BRING YOU TO CALIFORNIA THIS MONTH, YOU ARE NOW TELLING YOUR MOTHER, "FRANK'S NOT IN LOVE WITH ME ANY MORE'! YOU KNOW VERY WELL THAT THIS IS NOT TRUE. I CANNOT SWITCH MY LOVE FOR YOU ON AND OFF LIKE A LIGHT SWITCH. TO ME, YOU ARE STILL MY BEAUTIFUL GIRL... MY PRIZED "WEAPONS".

THE TRUTH OF THE MATTER IS THAT I'M NOT EVEN ASKING YOU TO "MEET ME HALF-WAY". I ONLY ASK YOU TO MEET ME A THIRD OF THE WAY, AS I AM CARRYING THE BULK OF YOUR LIVING EXPENSES. PLEASE WEAPONS!

I STILL LOVE YOU MY DARLING, AND MISS YOU BITTERLY. I CANNOT CONCIEVE OF NOT HOLDING YOU AT NIGHT AND DOING THE THINGS THAT WE ALWAYS DO TOGETHER. THE HOLIDAYS ARE COMING AND WE HAVE ALWAYS SPENT THEM TOGETHER. I DON'T WANT THIS YEAR TO BE DIFFERENT THAN THE PAST ONES. BUT YOU ARE NOT TALKING TO ME, SO THERE IS NO WAY I CAN CONSIDER THAT YOU WISH TO MAKE PLANS FOR THANKSGIVING AND CHRISTMAS.

IS THIS THE WAY YOU WANT IT TO BE?

PLEASE ADVISE. I MISS YOU AND I LOVE YOU VERY MUCH.

YOUR LONESOME AND VERY UNHAPPY francis.

(September 29,2009/16:00hrs PDT message ends)

TX Family Code Ann. Family § 2.401
SAMPSON & TINDALL'S TEXAS FAMILY CODE ANNOTATED
TEXAS FAMILY CODE
TITLE 1. THE MARRIAGE RELATIONSHIP
SUBTITLE A. MARRIAGE
CHAPTER 2. THE MARRIAGE RELATIONSHIP
SUBCHAPTER E. MARRIAGE WITHOUT FORMALITIES

Additions are indicated by Text ; deletions by Text .

§ 2.401. Proof of Informal Marriage

(a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been signed as provided by this subchapter; or

(2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

(c) A person under 18 years of age may not:

(1) be a party to an informal marriage; or

(2) execute a declaration of informal marriage under Section 2.402.

(d) A person may not be a party to an informal marriage or execute a declaration of an informal marriage if the person is presently married to a person who is not the other party to the informal marriage or declaration of an informal marriage, as applicable.

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 1997, 75th Leg., ch. 1362, § 1, eff. Sept. 1, 1997; Acts 2005, 79th Leg., ch. 268, § 4.12, eff. Sept. 1, 2005.

Current through 83rd Texas Legislature Regular and Called Sessions 2013

Copyright (c) 2014 Thomson Reuters Copyright (c) 1997, 2000-2010 National Conference of Commissioners on Uniform Laws All rights reserved
TX ST Family § 2.401
TX FCA Family § 2.401

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Family Code (Refs & Annos)
     Title 1. The Marriage Relationship (Refs & Annos)
      Subtitle C. Dissolution of Marriage
       Chapter 8. Maintenance (Refs & Annos)
        Subchapter B. Spousal Maintenance

V.T.C.A., Family Code § 8.051

§ 8.051. Eligibility for Maintenance

Effective: September 1, 2013
Currentness

In a suit for dissolution of a marriage or in a proceeding for maintenance in a court with personal jurisdiction over both former spouses following the dissolution of their marriage by a court that lacked personal jurisdiction over an absent spouse, the court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs and:

(1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence, as defined by Section 71.004, committed during the marriage against the other spouse or the other spouse's child and the offense occurred:

(A) within two years before the date on which a suit for dissolution of the marriage is filed; or

(B) while the suit is pending; or

(2) the spouse seeking maintenance:

(A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 1999, 76th Leg., ch. 62, § 6.05, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 304, § 1, eff. Sept. 1, 1999. Renumbered from § 8.002 and amended by Acts 2001, 77th Leg., ch. 807, § 1, eff. Sept. 1, 2001; Acts 2005, 79th Leg., ch. 914, § 1, eff. Sept. 1, 2005. Amended by Acts 2011, 82nd Leg., ch. 486 (H.B. 901), § 1, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 242 (H.B. 389), § 2, eff. Sept. 1, 2013.

Notes of Decisions (48)

V. T. C. A., Family Code § 8.051, TX FAMILY § 8.051
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Family Code (Refs & Annos)
     Title 1. The Marriage Relationship (Refs & Annos)
       Subtitle C. Dissolution of Marriage
         Chapter 8. Maintenance (Refs & Annos)
           Subchapter B. Spousal Maintenance

V.T.C.A., Family Code § 8.052

§ 8.052. Factors in Determining Maintenance

Effective: September 1, 2011
Currentness

A court that determines that a spouse is eligible to receive maintenance under this chapter shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors, including:

(1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage;

(2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;

(3) the duration of the marriage;

(4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

(5) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable;

(6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common;

(7) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(8) the property brought to the marriage by either spouse;

(9) the contribution of a spouse as homemaker;

(10) marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and

(11) any history or pattern of family violence, as defined by Section 71.004.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Renumbered from § 8.003 by Acts 2001, 77th Leg., ch. 807, § 1, eff. Sept. 1, 2001. Amended by Acts 2011, 82nd Leg., ch. 486 (H.B. 901), § 1, eff. Sept. 1, 2011.

Notes of Decisions (7)

V. T. C. A., Family Code § 8.052, TX FAMILY § 8.052
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Family Code (Refs & Annos)
      Title 1. The Marriage Relationship (Refs & Annos)
         Subtitle C. Dissolution of Marriage
            Chapter 8. Maintenance (Refs & Annos)
               Subchapter B. Spousal Maintenance

V.T.C.A., Family Code § 8.053

§ 8.053. Presumption

Effective: September 1, 2011
Currentness

(a) It is a rebuttable presumption that maintenance under Section 8.051(2)(B) is not warranted unless the spouse seeking maintenance has exercised diligence in:

(1) earning sufficient income to provide for the spouse's minimum reasonable needs; or

(2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending.

(b) Repealed by Acts 2011, 82nd Leg., ch. 486 (H.B. 901), § 9(1).

**Credits**
Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Renumbered from § 8.004 by Acts 2001, 77th Leg., ch. 807, § 1, eff. Sept. 1, 2001. Amended by Acts 2005, 79th Leg., ch. 914, § 2, eff. Sept. 1, 2005; Acts 2011, 82nd Leg., ch. 486 (H.B. 901), §§ 2, 9(1), eff. Sept. 1, 2011.

Notes of Decisions (9)

V. T. C. A., Family Code § 8.053, TX FAMILY § 8.053
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.



PETITIONER'S
EXHIBIT

136

EXPENSE AND INCOME REPORT PRIOR TO COURT PROCEEDINGS

CAUSE NO. 46,184

Cynthia Sinatra
PLAINTIFF/PETITIONER

Francis Wayne Sinatra, Jr.
DEFENDANT/RESPONDENT

John C. Maher, Jr.
ATTORNEY

Warren Cole
ATTORNEY

I CERTIFY THAT THE FOLLOWING ANSWERS TO QUESTIONS AS LISTED ARE TRUE AND CORRECT

1. DATE OF MARRIAGE: April 27, 2002    DATE OF SEPERATION: August 2012

2. AGES OF CHILDREN OF MARRIAGE: None

3. WHAT ARE YOUR NECESSARY MONTHLY EXPENSES, INDICATION THOSE SECURED BY MORTGAGE

| | | | |
|---|---|---|---|
| HOUSE PAYMENT | $2,900.00 | EXTERMINATORS | $200.00 |
| TAXES | Included in House Pymt | GIFTS | $200.00 |
| FOOD | $500.00 | NEWSPAPERS | $50.00 |
| DOCTOR | $1,000.00 | HOUSE CLEANERS | $480.00 |
| DENTIST | $0.00 | BEAUTY PARLOR | $250.00 |
| DRUGS | $1,200.00 | HAIRCUTS | $100.00 |
| LIFE INSURANCE | $300.00 | ENTERTAINMENT | $600.00 |
| HOSPITILIZATION | $0.00 | PET CARE | $20.00 |
| LIABILITY INS. | $150.00 | Electric | $1,000.00 |
| LOANS | Included in Comm. Debt | Telephone | $300.00 |
| FIRE INSURANCE | $450.00 (house) | Pool | $250.00 |
| CAR PAYMENT | $0.00 | Cable | $225.00 |
| GASOLINE & OIL | $600.00 | Centerpoint | $50.00 |
| CAR REPAIR | $300.00 | Yard | $200.00 |
| OTHER TRANSP. | $0.00 | Cleaners | $150.00 |
| LEGAL BILLS | $4,000.00 | Credit Cards | $1,000.00 |
| | | TOTAL | $16,475.00 |

FILED
at 8:37 o'clock AM.

JUN 01 2014

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO.
By